In re **FERNSTROM STORAGE AND VAN COMPANY, an Illinois corporation; Fernstrom Storage and Van Company of Virginia, a Virginia corporation; Fernstrom Storage and Van Company of Minnesota, a Minnesota corporation; and Bradley Moving and Storage Company, a Michigan corporation, Debtors.**

**Bankruptcy 80 B 13897 through 80 B 13900.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 8, 1989.

---

**1018**

John F. Horvath, Horvath & Wigoda, Steven P. Eisenberg, Chicago, Ill., for debtors.

Robert E. Gilmartin, Nick Papastratakos, Clausen Miller Gorman Caffrey & Witous, Chicago, Ill., for IBM.

## MEMORANDUM OPINION AND ORDER GRANTING THE MOTION TO MODIFY THE AUTOMATIC STAY

SUSAN PIERSON DeWITT, Bankruptcy Judge.

The matter before the Court is the Motion for Relief from Stay and/or Adequate Protection ("Motion") of International Business Machines Corporation ("IBM").[1] The responsive pleadings to the Motion are: Debtors' Memorandum in Opposition to IBM's Motion, IBM's Reply to Defendants'/Debtors' Response to IBM's Motion, Debtors' Surreply in Opposition to IBM's Motion, IBM's Surreply to Defendants'/Debtors' Surresponse in Opposition to IBM's Motion, IBM's Supplemental Brief Regarding Debtors' Liability Insurance, Debtors' Reply to Plaintiff's Supplemental Brief, and IBM's Reply to Debtors' Response to IBM's Supplemental Brief.

For the reasons set forth below, IBM's motion for relief from the automatic stay is granted.

### FACTUAL BACKGROUND

This dispute concerns the insurance coverage of Fernstrom Storage and Van Company ("Fernstrom") and its subsidiary corporation, Bradley Moving and Storage Company ("Bradley"). Fernstrom and Bradley are both Debtors in this consolidated case under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101 *et seq.* (Hereafter, all section references are to the Bankruptcy Code.) IBM was scheduled as a major unsecured creditor of the consolidated estate.

The present dispute originated in the June 30, 1979 fire at a warehouse owned and operated by Fernstrom and Bradley at 1495 Axtell Road, Birmingham, Michigan. Certain electronic equipment owned by IBM was in the warehouse at the time and destroyed or damaged by the fire.

IBM presented a written claim for damages from the fire to Fernstrom on March 12, 1980. Fernstrom refused to pay the amount of the claim. At some point in time, not known to this Court, IBM received compensation for its loss from its insurer. Having made this payment to its insured, IBM's insurer maintains that it is subrogated to IBM's fire loss claim against Fernstrom and Bradley.

---

1. Although the caption to IBM's motion states that this is a motion for relief from the automatic stay and for adequate protection, IBM does not address the adequate protection issue in its pleadings. In view of this Court's decision to allow modification of the automatic stay, it is unnecessary to address the issue of adequate protection in any event.

On October 23, 1980, Fernstrom and Bradley filed petitions for reorganization under Chapter 11. On October 28, 1980, their cases were consolidated, along with the bankruptcy cases of two other corporations affiliated with Fernstrom. (As only Fernstrom and Bradley are parties to this matter, all references to the "Debtors" are to Fernstrom and Bradley only.)

In its bankruptcy petition, each Debtor listed IBM as the largest of its creditors, owed a total of $106,747.46. The Debtors state that this amount does not include IBM's fire loss claim. As indicated by comparison of the Debtors' accounts payable schedules and the list of creditors receiving notice of the bankruptcy, the scheduled indebtedness to IBM is the sum of numerous smaller charges payable to various IBM offices throughout the country.

On January 7, 1981, IBM filed two proofs of claim in this case, relating to charges for IBM equipment purchased or rented by the Debtors. One IBM office also returned a ballot dated December 21, 1981 accepting the Debtors' Amended Plan of Reorganization. No proof of claim was filed by IBM with respect to the fire loss.

The Debtors' Disclosure Statement made no mention of the warehouse fire. Nor was there any special provision in the Debtors' original and amended plans of reorganization for claims from the fire loss.

It is undisputed that IBM engaged in settlement negotiations with Fernstrom and its insurers in the period preceding confirmation of the Debtors' Amended Plan of Reorganization. Two such meetings took place on March 19, 1981 and December 4, 1981. On or about April 27, 1981, one of the Debtors' insurers issued a check payable to IBM for $75,000. Exhibits to the pleadings indicate that the check was intended to be partial payment for the fire loss claim.

No settlement having been reached, IBM filed Case 82 C 4089, a civil action for damages, against the Debtors in the United States District Court for the Northern Dis-

trict of Illinois on June 30, 1982 ("Civil Action"). Both sides are represented by their insurers in the Civil Action.[2] Neither party disputes that the Civil Action is essentially an action between their insurers.

The filing of the Civil Action preceded by one day the Bankruptcy Court's July 1, 1982 determination that reorganization was no longer feasible. On August 10, 1982, the Debtors filed a Second Amended Plan of Reorganization, which provided for the orderly liquidation of the Debtors' assets.

In the period of over six years since the filing of the Civil Action, the parties have engaged in substantial discovery and motion practice. The Civil Action reached the point of readiness for trial upon entry of a final pretrial order in November, 1987. That pretrial statement indicates disagreement on numerous questions relating to the Debtors' insurance coverage.

On March 7, 1988 the Debtors moved to dismiss the Civil Action on the basis that continuation of the action violated the automatic stay in the Debtors' bankruptcy case. At that time, counsel for the Debtors explained that it had not brought the motion to dismiss at an earlier time because it assumed the automatic stay had been lifted. Transcript of proceedings before the Honorable William T. Hart, March 7, 1988, at 2–3 (IBM's Reply to Defendants'/Debtors' Response to IBM's Motion, Exhibit A). The Civil Action was dismissed without prejudice, with leave to reinstate the action if the bankruptcy judge modified, amended, or otherwise lifted the automatic stay.

### CONTENTIONS OF THE PARTIES

In its Motion, IBM contends that there is cause to modify the automatic stay so as to allow the Civil Action to proceed. IBM's principal argument is that modification of the stay will have no prejudicial effect on the estate. IBM characterizes the Civil Action as a proceeding against the Debtors' insurers, since both IBM's claim and the cost of defending the Civil Action are

---

**2.** Hereafter, where reference is made to settlement negotiations or litigation concerning the fire loss, the terms "Debtors" or "IBM" include

their insurers, as well as the attorneys representing the parties and their insurers.

alleged to be fully covered by the Debtors' insurance. IBM also disclaims any intention to seek recovery of any judgment from assets of the estate. To that end, IBM states that it waives the right to proceed against the Debtors for any deductible amounts under their insurance policies.

IBM contrasts this allegedly minimal effect on the Debtors with the hardship it would incur if the Civil Action cannot be reinstated. According to IBM, it would lose its subrogation rights against the Debtors' insurers. The cost to date of prosecuting the Civil Action would represent an additional loss. Given these factors, as well as the Debtors' apparent acquiescence to six years of litigation and settlement negotiations, IBM argues that it would be inequitable to terminate the Civil Action at this point.

The Debtors, on the other hand, argue that the Court should deny this Motion without engaging in the balancing type of analysis advocated by IBM. The Debtors base this argument on two instances of alleged disregard of bankruptcy procedure by IBM.

First, the Debtors argue that the Civil Action cannot proceed due to IBM's failure to file a proof of claim with respect to the fire loss. Under the Debtors' analysis, reinstatement of the Civil Action would allow IBM to circumvent the requirement that an unsecured creditor file a proof of claim in a bankruptcy case. The Debtors would also equate modification of the stay with an untimely amendment of IBM's earlier proofs of claim regarding the equipment sold or rented to the Debtors. Such an amendment would in effect add a new claim to IBM's earlier claim. The Debtors cite case law to the effect that this type of amendment after the claims bar date is impermissible. *In re Middle Plantation of Williamsburg, Inc.*, 48 B.R. 789, 797 (E.D. Va.1985).

Second, the Debtors note that the Civil Action was filed after the commencement of this bankruptcy case. The Debtors cite cases to the effect that actions brought in violation of the automatic stay are without legal effect. *E.g., In re Advent Corp.*, 24 B.R. 612, 614 (1st Cir.B.A.P.1982); *Young v. Critton (In re Young)*, 14 B.R. 809, 811 (Bankr.N.D.Ill.1981); *B–U Acquisition Group, Inc. v. Utica Mutual Insurance Co. (In re Baldwin–United Corp.)*, 52 B.R. 541, 548 (Bankr.S.D.Ohio 1985). Although the Debtors ask that the Court disregard the Civil Action as a nullity, they have not sought a finding of contempt or damages under § 362(h) for willful violation of the automatic stay.

The logical implication of the Debtors' analysis is that a creditor may reach the proceeds of a debtor's insurance policies only by filing a proof of claim in the debtor's bankruptcy case. In response to IBM's contention that it seeks no recovery from the Debtors or the estate, the Debtors cite a line of cases, described below, which finds that the proceeds of a debtor's insurance policies are property of the bankruptcy estate (the *"Manville–Robins* line of cases"). Under these cases an attempt to reach the insurance proceeds other than through the bankruptcy claims process is subject to the automatic stay.

This Court disagrees with the Debtors' analysis for two reasons. First, there is a substantial line of authority to the effect that a timely proof of claim is not an essential prerequisite to an action against a debtor's insurer. Second, the rationale of the *Manville–Robins* line of cases is inapplicable in this case. This opinion commences with a discussion of these two conclusions.

Having determined that the automatic stay is not an absolute barrier to continuation of the Civil Action, the Court then addresses whether cause exists in this case for allowing the Civil Action to proceed against the Debtors' insurers.

## DISCUSSION

I. *Failure to file a proof of claim does not preclude an action to recover proceeds of a debtor's insurance policies.*

In arguing that IBM's action against their insurer is time-barred, the Debtors cite the longstanding principle that a claim of an unsecured creditor will not be allowed if the creditor's proof of claim is

filed after the claims bar date. *E.g., Hoos & Co. v. Dynamics Corp. of America,* 570 F.2d 433, 439 (2d Cir.1978); *Levine v. First National Bank of Lincolnwood (In re Evanston Motor Co., Inc.),* 26 B.R. 998, 1003, *aff'd,* 735 F.2d 1029 (7th Cir.1984); *see also In re Chirillo,* 84 B.R. 120, 122 (Bankr.N.D.Ill.1988). The Debtors argue that the bar date also applies to actions against a debtor's insurer, although they cite no case law in support of that proposition.

IBM maintains that its claim is not time-barred because it seeks no distribution from the bankruptcy estate. IBM maintains that its failure to file a proof of claim has no effect on its action against the Debtors' insurers because the filing of a proof of claim is merely permissive. *E.g., In re Simmons,* 765 F.2d 547, 551 (5th Cir.1985). For example, a creditor might elect not to file a claim in a bankruptcy case where to do so would serve no purpose. *Id.* IBM expresses no disagreement with the proposition that a creditor that has not filed a timely proof of claim might not be entitled to share in the distribution in the bankruptcy case. Instead, IBM claims entitlement to payment from a nonbankrupt third party.

IBM goes on to compare its situation to that of the creditor in *In re Turner,* 55 B.R. 498 (Bankr.N.D.Ohio 1985). The creditor bank in *Turner* had filed four proofs of claim in the debtor's bankruptcy case, but had made no claim with respect to an alleged pre-petition RICO violation. Suit against the debtor and a number of other RICO defendants was not brought until after confirmation of the debtor's Chapter 13 plan.

The *Turner* debtor moved to dismiss the RICO action on the basis that the automatic stay applied to actions on the underlying debt, which had been discharged in bankruptcy. In response, the creditor stated that the claim against the debtor was covered by a fidelity bond. Also, the creditor stated that it would look exclusively to the bonding company for any judgment. The creditor would not proceed against the debtor or his estate for the deductible on the bond.

In granting relief from the automatic stay, the *Turner* court noted that denial of that relief would create a windfall for the insurer, as the RICO violation was covered by the fidelity bond. *Id.* at 502. The court compared the hardship to the employer with the cost to the debtor of defending the RICO litigation, concluding that to not lift the stay would be unfair. *Id.*

Under *Turner,* then, failure to file a proof of claim does not bar an action to recover the proceeds of liability policies insuring against a debtor's negligent or wrongful acts.

Other cases dealing with failure to file claims reach the same result. *See West v. White (In re White),* 73 B.R. 983 (Bankr.D.C.1987); *Wimmer v. Mann (In re Mann),* 58 B.R. 953 (Bankr.W.D.Va.1986); *Goldberger v. Simco, Inc. (In re Traffic Safety Co., Inc.),* 10 B.R. 751 (Bankr.E.D.Pa.1981). The same type of balancing has also been applied where the creditor had filed a claim in the case. *Elliott v. Hardison,* 25 B.R. 305 (E.D.Va.1982).

Whether or not a claim was filed in the bankruptcy case may actually be immaterial. At least one case has allowed an action against an insurer without mention of whether a proof of claim had been filed. *In re McGraw,* 18 B.R. 140 (Bankr.W.D.Wis.1982). Given the consistent authority to this effect, the Court finds that IBM's action against the Debtors' insurers is not barred by its failure to file a proof of claim.

The Debtors invoke a limitation on a claimant's ability to bring an action against a debtor's insurer. That discussion follows.

II. *The rationale of the decisions which have stayed actions against a debtor's liability insurer does not apply in this case.*

The Debtors argue that actions to recover the proceeds of a debtor's liability insurance are subject to the automatic stay. A number of decisions dealing with multiple tort claims against a debtor so hold. *E.g., A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986);

*Tringali v. Hathaway Machinery Co.*, 796 F.2d 553 (1st Cir.1986); *Forty–Eight Insulations, Inc. v. Lipke (In re Forty–Eight Insulations, Inc.)*, 54 B.R. 905 (Bankr.N.D. Ill.1985); *see also Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.)*, 40 B.R. 219 (S.D.N.Y. 1984) (the *"Manville–Robins* line of cases").

This line of cases defines property of the estate to include a debtor's insurance contracts as well as the proceeds therefrom. Notably, this determination regarding property of the estate is generally accompanied by a finding that intact insurance coverage serves as a bulwark against erosion of the estate. *See In re Davis,* 730 F.2d 176, 185 (5th Cir.1984). In all the *Manville–Robins* line of cases, liability insurance proceeds were insufficient to cover all tort claims potentially within the debtor's coverage. Given the insufficiency of insurance coverage, to allow suits against the insurers would favor earlier judgment holders and deplete the proceeds available to satisfy other tort claims.

The Debtors analogize their position to that of the debtors in the *Manville–Robins* line of cases, concluding that a payment to IBM would constitute an impermissible distribution of the bankruptcy estate. The Debtors' assertion that its liability insurance is insufficient to cover IBM's claim would tend to support this analogy. IBM disagrees with the Debtors' evaluation of the scope of its insurance coverage, however. According to IBM, its fire loss claim is fully covered by insurance. The parties also raise a collateral question as to whether insurance proceeds are payable to the Debtors' estate or directly to IBM.

Obviously, there is considerable uncertainty as to the parameters of the Debtors' insurance coverage and the Debtors' entitlement to the policy proceeds. That a debtor's interest in an insurance policy may be attenuated does not mean that the policies are not property of the estate, however. *See National Union Fire Insurance Co. of Pittsburgh, Pa. v. Titan Energy, Inc. (In re Titan Energy, Inc.),* 837 F.2d 325, 329 (8th Cir.1988); *Minoco Group of Companies, Inc. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Group of Companies, Ltd.),* 799 F.2d 517, 519 (9th Cir.1986); *but see Louisiana World Exposition, Inc. v. Federal Insurance Co. (In re Louisiana World Exposition, Inc.),* 832 F.2d 1391, 1401 (5th Cir.1987) (finding that directors' and officers' liability insurance policies were property of the estate, while proceeds of policies were not).

As in the *Manville–Robins* line of cases, *Titan* and *Minoco* concluded that the availability of insurance proceeds made the debtor's estates worth more with the insurance policies than without them. Interestingly, though, in a factual context somewhat similar to this case, *Titan* went on to allow adjudication of the issues of policy coverage in the pending court action. *Titan,* 837 F.2d at 333–334.[3]

For a number of reasons, this Court concludes that the *Manville–Robins* line of decisions is inapplicable in this case. First, until this Motion, the Debtors have never taken the position that their insurance proceeds were assets of the estate. As stated previously, there is no provision for the fire loss claims in the Debtors' plan of reorganization. Nor have the Debtors presented evidence showing that inclusion of the policy proceeds in the estate would reduce scheduled claims, thereby increasing the total amount available to unsecured creditors. Thus, the case differs from the *Manville–Robins* line of cases in that the estate has not been defined as including proceeds of the Debtors' insurance policies.

---

**3.** The *Titan* action involved a claim to policy proceeds made by a single creditor in a direct action in state court against the *Titan* debtor's insurer. No other parties had asserted claims alleging coverage. The bankruptcy case had also been converted from a Chapter 11 reorganization to a Chapter 7 liquidation. On these facts, the Eighth Circuit found that the bankruptcy court should abstain from deciding the issues of insurance coverage raised by the parties. In deciding that the state court action should proceed, the decision emphasized that, because of the conversion to a Chapter 7 case, there no longer was any reorganization to protect.

On the other hand, the depositions and correspondence attached as exhibits to the pleadings indicate that the Debtors were aware of and participated in insurance settlement negotiations during the pendency of the bankruptcy case. On the whole, it is not unreasonable to infer that, from the outset, the fire loss claims were intended to be handled by the insurer, rather than through the reorganization. In these circumstances, it would be inequitable to allow the Debtors to now claim that their insurance proceeds are part of the estate.

Second, the policy concerns underlying the *Manville–Robins* line of cases are not present here. In each of those cases, the debtor's need for relief from its tort liability was the motivating factor behind the reorganization. *E.g., Robins*, 788 F.2d at 996; *Tringali*, 796 F.2d at 556. As most of the cases involved unprecedented numbers of tort claims against the Debtor, there was also a need to centralize litigation in a single forum. *E.g., Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.)*, 33 B.R. 254, 264 (S.D.N.Y.1983). Reorganization furthered this goal of ensuring an equitable distribution of limited insurance funds. *Titan*, 837 F.2d at 330.

A second goal of the *Manville–Robins* line of cases was to facilitate the debtor's swift and efficient reorganization. Given the demands of litigation, continuation of the personal injury suits threatened to create a substantial drain on the time and energy of the debtor's personnel. The services of these personnel were essential to the debtor's reorganization. The stay was only intended as a temporary measure, though, enabling the debtor to determine whether reorganization was feasible. *See, e.g., Johns–Manville*, 40 B.R. at 225.

Neither of these concerns is present here. As IBM is the sole claimant of the insurance proceeds, there is no threat of inequitable distribution of the policy proceeds. Also, this Motion has been brought in a far different time frame than the tort claims in the *Manville–Robins* line of cases. Because this case was converted to a liquidating reorganization over six years

ago, continuation of the Civil Action does not threaten to divert the Debtors' principals' attention from a reorganization effort.

The Court accordingly finds that the rationale of the *Manville–Robins* line of cases is inapplicable here. Having concluded that there is no absolute barrier to an action to recover these insurance proceeds, the Court considers whether cause exists to lift the automatic stay.

III. *Cause exists to modify the automatic stay.*

 Cases considering modification of the automatic stay with respect to actions on insured claims recognize the equity of permitting a civil suit to proceed where the bankruptcy estate is in no way harmed. *Jessie v. Honosky (In re Honosky)*, 6 B.R. 667, 669 (Bankr.S.D.W.Va.1980). Modification has been permitted where (1) no great prejudice to either the debtor or the bankruptcy estate would result, and (2) the hardship to the plaintiff caused by the continuance of the stay considerably outweighs the hardship caused to the debtor by modification of the stay. *Teilhaber Manufacturing Co. v. Unarco Industries, Inc.*, 54 B.R. 266, 268 (Bankr.N.D.Ill.1985). Other factors that may be considered are the interests of judicial economy and the need for the expertise of the bankruptcy court. *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 509 (7th Cir. 1982).

Debtors in these cases often argue that modification of the stay is prejudicial to them because of their duty to cooperate in the defense of the action or because of insufficiency in coverage or a deductible. The fact that the debtor may be required to participate in the defense is not determinative of prejudice, however, especially when the debtor's insurance is obligated to provide counsel. *In re Bock Laundry Machine Co.*, 37 B.R. 564, 567 (Bankr.N.D. Ohio 1984); *In re McGraw*, 18 B.R. at 142. Nor is the fact that the debtor is only partially insured of controlling significance. *Foust v. Munson S.S. Lines*, 299 U.S. 77, 87, 57 S.Ct. 90, 95, 81 L.Ed. 49 (1936). Where it is undisputed that insurance cov-

erage is substantial, an action to recover insurance proceeds may not cause great prejudice to the estate. *See UNR*, 54 B.R. at 269.

In this case, the hardship to IBM from the continuance of the stay outweighs the hardship to the Debtors if the stay is modified. Discovery has been completed in the Civil Action and it is ready for trial. As in any litigation, further delay may be prejudicial to IBM's case, as the passage of time increases the possibility of loss of valuable testimony and evidence. The opportunity to litigate is a significant right which cannot easily be set aside, despite the existence of a bankruptcy proceeding. *In re Bock Laundry Machine Co.*, 37 B.R. at 566.

The hardship to the Debtors is considerably less. Because the matter is ready for trial, the Debtors' obligation to cooperate in the defense of the Civil Action should require little more than testimony at trial. It would also promote judicial economy to promptly bring the Civil Action to trial, as the District Court is familiar with the insurance issues involved.

The Debtors argue that great prejudice would result to the estate in that the Civil Action would have to be commenced anew. They base this contention on the fact that the Civil Action was allegedly commenced in violation of the stay. This Court rejects this argument. Where a debtor without legitimate excuse allows a creditor's action to proceed in violation of the automatic stay, a court has the discretion to suspend the provisions of the stay. *See Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984). In view of the Debtors' failure in almost six years of litigation to object to continuance of the Civil Action, that action need not be recommenced.

The Debtors' remaining assertions as to prejudice relate to the alleged insufficiency of their insurance coverage and to their obligations under the deductible provisions of their policy issued by the St. Paul Insurance Company. Any concerns regarding the potential liability of the estate may be obviated, however, by an order which prohibits any action to collect from the estate. *E.g., In re Turner*, 55 B.R. at 502; *In re McGraw*, 18 B.R. at 141–142. The order modifying the stay may also be limited to allow proceeding only to the extent of the debtor's insurance coverage. *E.g., In re Honosky*, 6 B.R. at 670. This Court will so condition its order modifying the automatic stay.

THEREFORE, IT IS HEREBY ORDERED that IBM's Motion for Relief from Stay is granted. The Civil Action in Case 82 C 4089 in the Northern District of Illinois may proceed to determine the obligation of the Debtors' insurers to compensate IBM for its loss from the fire on June 30, 1979.

IT IS FURTHER ORDERED that IBM be enjoined from collecting from the Debtors or their property or the bankruptcy estate any judgment awarded in that Civil Action.