**In the Matter of GATKE CORPORATION, Debtor.**

**Bankruptcy No. 87–30308–RKR.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Sept. 20, 1989.

Michael E. Armey, and Rex L. Reed, Warsaw, Ind., for debtor.

Lewis C. Laderer, Jr., and Rebecca Hoyt Fischer, Kramer, Butler, Simeri, Konopa & Laderer, South Bend, Ind., for creditor, Illinois Cent. Gulf R. Co.

Jeffery A. Johnson, and Patricia E. Primmer, May, Oberfell & Lorber, South Bend, Ind., for the Creditors Committee.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

Illinois Central Gulf Railroad Company ("Illinois Central") filed its Motion for Relief from Automatic Stay on October 1, 1987, requesting the court to lift the stay with respect to a state court action in which Illinois Central is a defendant. On January 20, 1988, the parties advised the court that they would be able to stipulate to the relevant facts and that a hearing on Illinois Central's motion would be unnecessary. The court accordingly entered its Order of February 4, 1988, directing that the parties' filing of their stipulation and briefs would constitute a full submission on this matter. The parties filed their Stipulation of Facts on July 13, 1988, and the court took the matter under advisement on March 6, 1989, following the time allowed for submitting briefs.

### Background

Gatke Corporation ("Gatke"), the Debtor herein, Illinois Central, and the Creditors' Committee stipulated to the following facts:

1. On or about March 2, 1987, Debtor filed its Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

2. The Court's jurisdiction of this contested matter is based upon Title 28 U.S.C. § 1471, and upon Title 11 U.S.C. § 362(d).

3. Illinois Central is a corporation duly organized under the laws of the state of Delaware with its principal corporate offices at 233 North Michigan Avenue, Chicago, Illinois 60601.

4. Illinois Central is named as a defendant in a civil action currently pending in the Circuit Court of Warren County, Mississippi, titled Milburn Latrell Meador, Jr. v. Illinois Central Gulf Railroad Company and Illinois Central Gulf Railroad Company v. Gatke Corporation, et al which case is assigned cause number 13,571 (the state court litigation).

5. In the state court litigation, plaintiff Meador seeks to recover damages allegedly resulting from exposure to asbestos products during his employment with Illinois Central.

6. The copy of Meador's Complaint attached to and made a part of Illinois Central's Motion is true, complete, and may be considered by the Court as evidence without objection.

7. In the state court litigation, Illinois Central seeks indemnity and/or contribution from debtor Gatke Corporation, and others, because the asbestos containing products to which plaintiff was allegedly exposed during his employment with Illinois Central were furnished to Illinois Central by debtor Gatke Corporation and the other third party defendants.

8. The copy of Illinois Central's third party complaint debtor Gatke Corporation attached to and made a part of Illinois Central's motion is true and complete and may be considered by the Court as evidence without objection.

9. The debtor Gatke Corporation has referred Illinois Central's third party complaint to its insurer pursuant to a policy of liability insurance.

10. The debtor Gatke Corporation may be entitled to coverage for any damages or liabilities it ultimately sustains as a result of the state court litigation pursuant to a policy or policies of liability insurance.

11. The Debtor estimates that there may be as many as 800 to 1,000 lawsuits filed against the debtor in relation to asbestos-related claims.

12. The Debtor cannot determine at this time the extent to which the insurance coverage will pay for defense costs and/or damages and/or liabilities it ultimately sustains as a result of these numerous state court litigations.

Stipulation of Facts (July 13, 1988).

In its Motion for Relief from Automatic Stay Illinois Central asks the court to lift the stay as it relates to Illinois Central and

the pending state court litigation concerning the asbestos claim. Illinois Central asserts that as Gatke is covered by insurance for any damages it may incur as a result of the pending litigation, it will not be harmed by lifting the stay. Illinois Central further contends that lifting the stay will not hamper Gatke's ability to reorganize since its insurance company will be responsible to pay any judgment or costs resulting from the litigation. In its brief in support of its motion Illinois Central asserts that the automatic stay should not apply to this action as the other parties to the state court suit are likely to suffer hardship by the delay and since the state court could determine the matter more quickly than the bankruptcy court. Furthermore, Illinois Central argues that principles of judicial economy favor allowing the state court, which has more knowledge of the factual dispute at hand, to resolve the matter.

The Creditors' Committee and the debtor object to Illinois Central's request for relief from the stay. In its brief the Creditors' Committee indicates that Gatke may be involved in 800 to 1,000 cases involving asbestos claims. As Gatke had various insurers for the risks related to its manufacture of asbestos products, the cases may involve numerous insurance companies. The Creditors' Committee asserts that at this point Gatke is unable to determine the extent to which its possible liabilities stemming from asbestos claims will be covered by insurance. Since the insurance policies held by Gatke are property of the estate pursuant to 11 U.S.C. § 541(a)(1), the Creditors' Committee argues that the automatic stay does apply to actions against the companies which insure Gatke. The Creditors' Committee submits that the automatic stay will provide a systematic, fair method of resolving the various lawsuits against Gatke and allocating the limited resources available to those successful claimants who seek recovery from Gatke and/or its insurers.

Gatke also argues that the court should decline to lift the stay. Gatke states that the prevailing view among the courts is that an insurance policy is property of the estate protected by 11 U.S.C. § 362(a)(3).

Similarly, Gatke notes that courts which have considered the question recently have determined that liability insurance falls within the scope of § 541(a)(1). As Gatke's insurance coverage with respect to asbestos claims is limited, Gatke contends any recovery by Illinois Central would diminish the pool of available resources in Gatke's estate to the detriment of other claimants and creditors. Gatke cites various cases involving asbestos-related claims like those pending against Gatke in support of its position that permitting Illinois Central to proceed in the state court action at this time would be inequitable not only to the debtor but also to the numerous additional claimants who seek recovery from Gatke's estate and the insurance policies included therein.

## Discussion and Decision

The court must determine in this case whether to lift the automatic stay to permit Illinois Central to proceed with its state court third-party complaint against the debtor. Title 11 U.S.C. § 362(a) states in relevant part:

(a) Except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;....

11 U.S.C. § 362(a)(1) and (3) (Callaghan 1988). Section 362(d)(1) further provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (1) of this section, such

as by terminating, annulling, modifying, or conditioning stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; ...

11 U.S.C. § 362(d)(1) (Callaghan 1988). The purpose of the automatic stay is to preserve the debtor's estate and provide for the orderly distribution of the debtor's assets "thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' " *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 508 (7th Cir.1982) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 6296–97 and quoting *Litton Systems, Inc. v. Frigitemp Corp. (In re Frigitemp Corp.)*, 8 B.R. 284, 289 (D.C.S.D.N.Y.1981), citing *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)). Importantly § 362(d)(1) does not purport to list the exclusive "causes" which merit lifting of the automatic stay. Other causes may include "a desire to permit an action to proceed to completion in another tribunal." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977), 1978 U.S.Code Cong. & Ad. News 6300.

■ The Bankruptcy Code commits the discretion to lift or modify the stay to the bankruptcy judge. *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985) (citing *Holtkamp*, 669 F.2d at 507). A court is to look to the facts of a particular motion to determine whether lifting the automatic stay is appropriate under the circumstances. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 343–44 (1977). Bankruptcy courts have mod-

ified or lifted the stay to permit continuance of a civil suit against the debtor when (1) no "great prejudice" to the bankruptcy estate would result; (2) the hardship to the plaintiff caused by the continuation of the stay outweighs the hardship caused to the debtor by modification of the stay; and (3) the plaintiff has a probability of prevailing on the merits of his case. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5836; *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D.Ill.1986); and generally *Holtkamp*, 669 F.2d at 508.

Several courts have held that the automatic stay applies to a debtor's insurance policies and the proceeds therefrom in situations where numerous parties hold tort claims against the debtor. *See In re Fernstrom Storage and Van Co.*, 100 B.R. 1017, 1021–22 (Bankr.N.D.Ill.1989) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553 (1st Cir.1986); *Forty–Eight Insulations, Inc. v. Lipke (In re Forty–Eight Insulations, Inc.)*, 54 B.R. 905 (Bankr.N.D. Ill.1985); as well as *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.)*, 40 B.R. 219 (S.D. N.Y.1984) and referring to the cases as the "*Manville–Robins* line of cases"). These courts have recognized that "intact insurance coverage serves as a bulwark against erosion of the estate." *Id.* (citing *In re Davis*, 730 F.2d 176, 185 (5th Cir.1984)).[1]

■ Illinois Central asserts that lifting the automatic stay to allow completion of the state court action concerning its third-party complaint against Gatke would have

---

**1.** The court notes that in *In re Fernstrom Storage and Van Co.* the court found the rationale used by the courts in the *Manville–Robins* line of cases to be inapplicable as the debtors had never taken the position that the proceeds of its insurance policies were assets of their estate. 100 B.R. at 1022. For instance, the debtors had not shown that proceeds from the policies would reduce scheduled fire loss claims and had not included the claims which would be covered by the insurance in their plan of reorganization. *Id.* The court concluded from the debtors' actions that the debtors intended for

the insurance company to cover fire loss claims and did not intend to deal with the claims in their plan of reorganization. *Id.* at 1023. The court further distinguished the *Manville–Robins* cases, stating that in those cases the debtor's primary reason for reorganizing was to obtain relief from the tort claims and that due to the large number of claims a central litigation site was necessary. *Id.* Moreover, the court found that in the case before it "there [wa]s no threat of inequitable distribution of the policy proceeds." *Id.*

**410**

no adverse effect on Gatke since Gatke is covered by insurance and its insurance company will have the ultimate responsibility of defending the lawsuit and satisfying any possible judgment resulting therefrom. Reviewing the *Manville–Robins* line of cases and considering the balance of the equities in this case, however, the court concludes that Illinois Central's motion to lift the automatic stay should be denied. The court finds that the concerns which the courts expressed in the *Manville–Robins* line of cases are similar to those arising in this case.

The court recognizes that a stay of the litigation in Mississippi will cause some hardship to Illinois Central and perhaps to the other parties involved in the litigation. Yet, the court believes that the hardship to Gatke and its creditors, including Illinois Central, would be greater if the court modified the stay to permit Illinois Central to continue with its third-party complaint in Mississippi. The parties indicate that approximately 800 to 1000 different tort claimants may file asbestos-related claims against Gatke. Certainly, even if each of these claims is covered by some amount of insurance (the extent of which Gatke is unsure at this time), a centralized forum is necessary due to the significant number of claims and the resulting financial constraints. Very likely, if a number of the claimants are successful in their claims against Gatke, Gatke's insurance coverage will be inadequate to cover all of its potential liability. The threat of inequitable distribution of the insurance proceeds in this case thus is very real.

The court further considers that allowing Illinois Central relief from the automatic stay would encourage the filing of similar requests for relief by plaintiffs of pending lawsuits involving similar claims and would result in undue prejudice to Gatke and its creditors. Taking into consideration all of the relevant facts, the court concludes that the interests of Gatke and its creditors in the continuance of the automatic stay outweigh Illinois Central's interest in obtaining relief from the stay and in pursuing its claim against Gatke in another jurisdiction. The court therefore finds that Illinois Cen-

tral's Motion for Relief from Automatic Stay should be denied.

### Conclusion

WHEREFORE, the court now denies Illinois Central's Motion for Relief from Automatic Stay. It is

SO ORDERED.