David R. Snodgrass, Stephen A. McCartin, Holland Neff O'Neil, Gardere & Wynne, L.L.P., Dallas, TX, for Sfuzzi, Inc.

H. DeWayne Hale, Hale, Trust, Aston, Seckel & Taubenfeld, P.C., Dallas, TX, for Sfuzzi Subsidiaries.

Mark E. Golman, Vic H. Henry, Michael G. Oddo, Story, Armstrong, Steger & Martin, P.C., for Daniel Michael Kadingo, by and through his next friend, Antonio Kadingo; Jennifer Kadingo, individually; and Antonio Kadingo, individually.

---

**In re SFUZZI, INC., et al., Debtors.**

**Bankruptcy Nos. 395–35194–HCA–11 to 395–35204–HCA–11 and 395–35195–HCA–11.**

United States Bankruptcy Court,
N.D. Texas, Dallas Division.

Jan. 31, 1996.

*MEMORANDUM OPINION ON REPORT OF SETTLEMENT AND EMERGENCY MOTION FOR RELIEF FROM STAY*

HAROLD C. ABRAMSON, Bankruptcy Judge.

CAME ON for hearing on the 13th day of December, 1995, the Report of Settlement and Emergency Motion for Relief from Stay ("Motion") filed by (1) Daniel Michael Kadingo, by and through his next friend, Antonio Kadingo; (2) Jennifer Kadingo, individually;

and (3) Antonio Kadingo, individually (collectively, the "Kadingos") and the Response to the Motion ("Response") filed by Sfuzzi, Inc., Sfuzzi Dallas I Corp. and Sfuzzi X Addison, Inc. (collectively, the "Debtors"). The Court has jurisdiction over the issues involved pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O). This decision constitutes the ruling of the Court thereon.

## PROCEDURAL BACKGROUND

On August 21, 1995, the Debtors filed their voluntary petitions under Chapter 11 of the Bankruptcy Code with this Court. On September 12, 1995, this Court entered an order allowing the Kadingos to pursue their claims against the Debtors in state court. A settlement was approved by the state court on December 1, 1995, prompting the Kadingos to file their Motion. The Debtors have filed a Response in opposition to the Kadingos' Motion, and request a determination of whether the proceeds from the Debtors' liability insurance policies used to pay the settlement with the Kadingos are property of the bankruptcy estate under 11 U.S.C. § 541(a). If the Court determines that the proceeds are property of the estate, then they will be subject to the priorities of the Bankruptcy Code provided in 11 U.S.C. § 507, and could not be distributed directly to the Kadingos, as provided in their settlement with the Debtors.

## FACTUAL BACKGROUND

In the early morning hours of March 26, 1993, Daniel Kadingo was pushing his vehicle off a roadway in Dallas County, Texas, when he was hit by a car driven by Lacinda Dawn Leech ("Leech"). At the time, Leech was driving with twice the legal limit of alcohol in her blood. The incident left Daniel Kadingo in a coma.

The Debtors own and operate restaurants called "Sfuzzi," in which both food and alcohol are served. Based on the claim that Leech had been served alcohol at one of the Sfuzzi restaurants before the incident, the Kadingos brought an action in state court (the "State Court Action") against several defendants, including the Debtors. The Ka-

dingos sought damages in excess of $20 million against the Debtors and their liability insurance carriers. The Debtors were covered by a $1,000,000 liability insurance policy and a $10,000,000 umbrella liability insurance policy (collectively, the "Policies"), which were issued by two different insurers. The State Court Action was pending in the 298th Judicial District Court of Dallas County, Texas, Cause No. 93–11735, when the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The bankruptcy filings caused an automatic stay of the proceedings in the State Court Action under 11 U.S.C. § 362.

On September 12, 1995, this Court entered an order granting the Kadingo's Motion For Relief From The Automatic Stay (the "September 12th Order") to allow the Kadingos to pursue their claims in the State Court Action. At the September 12th hearing, the Debtors specifically raised and reserved the issue of whether the proceeds from the insurance policies are property of the bankruptcy estate. In the September 12th Order, this Court reserved the issue by saying that "the automatic stay is not terminated at this time to permit Movants to attempt to enforce or collect any judgment entered in the State Court Action against Debtors absent entry of a further order by this Court."

The State Court Action was scheduled for trial on December 4, 1995, prior to that date, the Litigation Counsel for the Debtors and the Debtors' insurers reached the terms for a settlement with the Kadingos (the "Settlement"). Under the Settlement, the insurers were to pay $1,200,000 to the Kadingos in exchange for a release of all claims against the Debtors. The Settlement was approved by the State Court on December 1, 1995, and the State Court Dismissed the Kadingos' claims against the debtors with prejudice.

The Debtors are represented in their bankruptcy by Gardere & Wynne, L.L.P. and Hale, Trust, Aston, Seckel & Taubenfeld, P.C. ("Bankruptcy Counsel"); and are represented in the State Court Litigation by Vial, Hamilton, Koch & Knox, L.L.P. ("Litigation Counsel"). Upon learning of the Settlement, the Debtors' Bankruptcy Counsel informed counsel for the Kadingos and the Debtors' Litigation Counsel that they believed there

was still an unresolved question as to whether the proceeds from the insurance policies used to pay the Settlement were property of the bankruptcy estate. On December 5, 1995, the Kadingos filed this Motion for the Court's determination of this issue.

## ANALYSIS

This Motion was brought as a contested proceeding under Federal Rule of Bankruptcy Procedure 9014. Since the parties are seeking a determination by this Court as to whether the proceeds from the liability insurance policies of the Debtors are property of the Debtors' bankruptcy estate, under 11 U.S.C. § 541(a), it appears to the Court that this Motion should be construed as a declaratory judgment proceeding under Federal Rule of Civil Procedure 8(f), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9032.

"Property of the estate," as defined in 11 U.S.C. § 541(a)(1), includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Courts are generally in agreement that an insurance policy itself will be considered property of the estate.[1] This does not end the inquiry, however, because the more important question the Court must determine is whether the *proceeds* from liability insurance policies are also considered property of the estate.[2]

■ The cases relied upon by the Debtors and the Kadingos indicate what appears to be a conflict in the decisions of two Fifth Circuit Panel opinions on this issue. The Kadingos rely principally on *In re Edgeworth*, 993 F.2d 51 (5th Cir.1993), for the proposition that liability insurance proceeds are not property of the estate when the debtor has no legally cognizable claim to them. The Debtors rely principally on *In re*

*Vitek*, 51 F.3d 530 (5th Cir.1995), for the proposition that the proceeds from liability insurance policies are always considered property of the estate, whether or not they would be paid to the debtor outside of the bankruptcy context. This Court is bound by the position of the Fifth Circuit on this issue; therefore, a synopsis of these cases is appropriate, which the Court will follow with an assessment of their relevance to the facts before the Court.

### Synopsis of Cases

In *Edgeworth*, when faced with the question of whether liability insurance proceeds were property of the estate, in a case where the policy limit of the insurance was sufficient to cover both the claim against the proceeds and other competing claims to the proceeds, Judge Edith H. Jones, Circuit Judge, writing the opinion for the panel, said:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim. When a payment by an insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.[3]

The panel distinguished this set of facts from cases involving mass torts and cases in which the insurance proceeds would be exhausted by the plaintiffs' claims if the proceeds were not marshalled by a court by saying that:

> In the mass tort context, the decisions by several courts to include the proceeds as property of the estate appear to be motivated by a concern that the court would not otherwise be able to prevent a free-for-all against the insurer outside the bankruptcy proceeding. [citation omitted] There was also a threat that, unless the

**1.** *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir.1993); *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir.1993); *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir.1987); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553 (1st Cir.1986); *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir.1985), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

**2.** *See Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir.1987) ("The question is not who owns the policies, but who owns the liability proceeds.") According to 11 U.S.C. § 541(a)(6), an estate includes "proceeds, product, offspring, or profits of or from property of the estate."

**3.** *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55–56 (5th Cir.1993).

policy proceeds were marshalled in the bankruptcy proceeding, they would not cover plaintiffs' claims and would expose the debtor's estate.[4]

The panel then gave examples of insurance policies in which the proceeds of the policies are property of the estate by virtue of the debtor having a right to keep the proceeds when the insurer pays on a claim; these include collision, life, and fire insurance policies in which the debtor is a beneficiary.[5] The panel said that:

Proceeds of such insurance policies, if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may enure to all bankruptcy creditors. But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.[6]

In *Vitek*, the Fifth Circuit Panel dealt with issues in both insurance and bankruptcy law; specifically, the court was asked to decide the following issue: "When one of two or more coinsureds declares bankruptcy and seeks protection under Chapter 7 of the Bankruptcy Code, what part of the proceeds of a liability policy that cover the non-bankrupt coinsureds should enrich the estate of the coinsured debtor?"[7] At one point, the *Vitek* opinion delves into a discussion of the distinction between ownership of an insurance policy versus ownership of the proceeds of an insurance policy. In this discussion, the panel is critical of the analysis in *Edgeworth* as to whether liability insurance proceeds are property of the estate, but it never directly refutes the test established in *Edgeworth*.[8] When he discussed the issue of ownership of the proceeds of an insurance policy, Judge

Jacques L. Wiener, Jr., Circuit Judge, writing the opinion for the panel, wrote:

The issues here considered are more frequently encountered in proceedings in Chapter 11 reorganizations than in Chapter 7 liquidations. Consequently any analogical crossovers into Chapter 11 jurisprudence is problematical, particularly those Chapter 11 proceedings that implicate mass tort litigation, e.g., asbestos, birth control devices, etc. In the same vein, the precedential—or even merely instructional—value of this opinion to future Chapter 11 cases should probably be "little or none."[9]

*Vitek* involved a Chapter 7 case in which the aggregate potential liability of the debtor substantially exceeded the aggregate limits of the available insurance coverage. This very issue was dealt with in *Edgeworth*, when Judge Jones stated that, "No secondary impact has been alleged on Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds." In answer to cases in which the claims by litigants must be marshalled by the bankruptcy court to prevent a "free-for-all" against the debtor's estate, because the claims against the estate would exhaust the policy limits of liability insurance, the panel said that "these concerns are answered once the court finds that the policy itself is property of the estate; [because] the section 362 stay should adequately protect the interests of all parties involved."[10] Further evidence that the *Edgeworth* test still has force in the Fifth Circuit can be found in the *Zale* opinion recently decided by another Fifth Circuit Panel, in which the *Edgeworth* test is cited when discussing whether insurance proceeds

4.  *Id.* at 56 n. 21.

5.  *Id.* at 56.

6.  *Id.*

7.  *In re Vitek*, 51 F.3d 530, 535 (5th Cir.1995)

8.  The panel in *Vitek* wrote that, "When a debtor corporation owns an insurance policy that covers its own liability *vis-a-vis* third parties, we—like

almost all other courts that have considered the issue—declare or at least imply that both the policy *and the proceeds* of the policy are property of the debtor's bankruptcy estate." *Id.* This language was, however, dicta, and the ultimate decision was based on a misapplication of insurance law by the District Court.

9.  51 F.3d at 533 n. 3.

10.  993 F.2d at 56 n. 21.

should be considered property of the estate.[11]

### Relevance to Present Facts

■ Faced with what might seem to be a conflict in the Fifth Circuit, but taking a clue from Judge Wiener in *Vitek* when he said the precedential value of this opinion to future Chapter 11 cases should be "little or none," this Court concludes the law in the Fifth Circuit to be that insurance *policies* are property of the estate under 11 U.S.C. § 541(a)(1), but the question of whether the *proceeds* are property of the estate must be analyzed in light of the facts of each case.

■ Unquestionably, proceeds from collision, life, and fire insurance policies are property of the estate when the proceeds are made payable to the debtor rather than to a third party, such as a creditor. Some courts have also found that the proceeds from liability insurance policies are property of the bankruptcy estate, but these courts were usually dealing with cases that involved mass torts or cases in which the major asset was the insurance policy.[12] The Fifth Circuit Panel in *Edgeworth* pointed this out, when it discussed cases that involve a mass tort type of claim that would exhaust the insurance proceeds and would threaten the debtor's estate over and above the limits of the liability insurance policy.[13] According to *Edgeworth*,[14] the question to be answered is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim: (1) if the answer to that question is "yes," then the proceeds of the liability insurance policy are property of the estate; (2) if the answer is "no," then the proceeds are not property of the estate and they cannot enhance the bankruptcy estate for other creditors.[15]

### CONCLUSION

The Court finds that the Settlement of the State Court Action represents a claim on the Debtors' insurance fund that is not a mass tort type of claim that would exhaust the insurance proceeds or threaten the Debtors' estate over and above the limits of the liability insurance policies. The Court further finds that the insurance proceeds relating to the Settlement of the State Court Action are not property of the estate under 11 U.S.C. § 541(a), because the debtor would have no right to receive and keep those proceeds when the insurer paid on the claim. Based on the foregoing; the Court has determined that the Motion should be **GRANTED.**

A separate order was previously rendered by the Court.

---

**11.** *See In re Zale Corp.*, 62 F.3d 746, 758 n. 33 (5th Cir.1995). The panel did not decide the issue of whether the proceeds were property of the estate, but merely stated the *Edgeworth* test when discussing previous decisions in which Fifth Circuit Courts had found that an insurance policy was property of the estate when the proceeds were not property of the estate.

**12.** *See MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2d Cir.) (possible suits by tens of thousands of asbestos victims), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553 (1st Cir.1986) (dollar amount of claim exceeded the policy limits); *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir.1985) (insurance policy was considered "most important asset" of the estate), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Davis*, 730 F.2d 176 (5th Cir. 1984).

**13.** *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir.1993).

**14.** *Id.*

**15.** This Court does not believe that the Fifth Circuit would decide that the proceeds of liability insurance policies, under these facts (e.g., where the policy limits will not be exhausted and there is no danger to the estate of claims exceeding those policy limits), are property of the estate and are subject to the priorities set up by the Bankruptcy Code for payments of administrative expenses, taxes, wages, etc., that would come ahead of general creditors, such as the tort claimants for whom the underlying lawsuit is based.