**In re SCOTT WETZEL SERVICES, INC., Debtor.**

**Bankruptcy No. 98–18366–8P7.**

United States Bankruptcy Court,
M.D. Florida, .
Tampa Division.

Aug. 27, 1999.

Shawn Hanson, San Francisco, CA, Leonard H. Gilbert, Tampa, FL, for movants.

Larry Hyman, Tampa, FL, trustee.

Jeffrey W. Warren, Tampa, FL, for trustees.

Robert Soriano, Tampa FL, for creditors.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY BY SAFEWAY, INC.

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing upon the Motion for Relief From Automatic Stay filed by Safeway, Inc. (Safeway). The Court has considered the Motion, and the record, heard argument of counsel and now finds and concludes as follows:

Scott Wetzel Services, Inc. (Debtor) was in the business of administering insurance plans for entities that maintained self-insured type programs. The Debtor would establish trust accounts for depositing funds received from clients and would then use those funds to pay claims and expenses on behalf of those clients.

One of the Debtor's clients was Safeway, a grocery store chain located in California, that had hired the Debtor to administer workers' compensation claims. Safeway claims that an agent or employee of the Debtor misappropriated over $1 million of Safeway's money from its trust account.

The Debtor had purchased an insurance policy issued by National Union Fire for liability coverage in the amount of $3 million; and another liability insurance policy providing excess coverage in the amount of $2 million (the "Liability Insurance Poli-cies"). Once the $3 million from the primary policy has been exhausted, then claims may be paid from the $2 million policy. No matter how many claims are asserted during the claims period, the total liability of National Union Fire is $3 million and the total liability of Reliable is $2 million.

The Debtor filed its voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on October 21, 1998. Subsequently, the Debtor's case was converted to a case under Chapter 7. Larry Hyman has been appointed as the Chapter 7 Trustee.

Several claims have been asserted against the Debtor. A factual dispute presently exists as to whether the aggregate covered claims will exceed the coverage provided by the Liability Insurance Policies.

Based on the loss of funds that Safeway claims was misappropriated by the Debtor's agent, Safeway filed a proof of claim, asserting an unliquidated claim under various legal theories, including tortious interference with business relationships and breach of fiduciary duty. Pursuant to 11 U.S.C. § 502(c), the claim must be either estimated or liquidated before it can be allowed.

Safeway seeks relief from the automatic stay in order to pursue an action against the Debtor as a nominal defendant for the purpose of recovering under the Liability Insurance Policies. Safeway's Motion is one of at least three motions for relief from stay filed by claimants seeking to pursue the proceeds of the Liability Insurance Policies. The Chapter 7 Trustee opposes the Motion.

■ In determining whether to grant relief from the automatic stay, the initial consideration is whether the proceeds of the Liability Insurance Policies insuring the Debtor are property of the estate. If the proceeds are not property of the estate, then the scope of the automatic stay does not extend to the insurance proceeds

and, since the Trustee has not sought an injunction under 11 U.S.C. § 105, Safeway may proceed with its lawsuit.

◼ "Property of the estate," as defined in 11 U.S.C. § 541(a)(1) includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Although the law is clear that an insurance policy issued to the debtor will generally constitute "property of the estate", *See Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir.1993), the question of whether the proceeds of an insurance policy are property of the estate must be analyzed in light of the facts of each case. *See In re Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr.N.D.Tx.1996).

In *Edgeworth, supra*, individuals holding a medical malpractice claim against the Chapter 7 debtor sought authority to pursue their lawsuit against the debtor in order to collect any judgment solely from the proceeds of the debtor's malpractice liability policy. The Fifty Circuit Court of Appeals held that the claimants could do so because 11 U.S.C. § 524(e) excludes the liability insurance carrier from the protection of the bankruptcy discharge and the proceeds of the policy were not property of the debtor's estate. In making this determination, the court stated,

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim. When a payment by an insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.

*Edgeworth, supra* at 55–56.

◼ Thus, in applying the *Edgeworth* test, a debtor will not have a cognizable interest in the proceeds of the typical liability policy because the proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of

the insurance contract. *Edgeworth, Id.* at 55.

◼ The Trustee points to *Matter of Vitek, Inc.*, 51 F.3d 530 (5th Cir.1995) in support of his position that the insurance proceeds are property of the estate. In *Vitek*, however, whether the liability insurance proceeds constituted property of the estate was not an issue. The bankruptcy court had merely approved a compromise between the tort claimants, the trustee and the insurance companies which provided that the proceeds of the policies would be paid into the bankruptcy estate for the benefit of creditors. The Fifth Circuit made an erroneous generalization in stating, "On the other extreme, when a debtor corporation owns an insurance policy that covers its own liability *vis-a-vis* third parties, we—like almost all other courts that have considered the issue—declare or at least imply that both the policy *and the proceeds* of that policy are property of the debtor's bankruptcy estate." *Vitek, Id.* at 535 (citations omitted). In making this generalization, the court, without any analysis, cited to mass tort cases, clearly distinguishable from the instant case, where the courts shared two common goals—to insure equitable division of a limited insurance fund, and to facilitate the debtor's swift and efficient reorganization. *In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir.1988). The issue actually decided in *Vitek* was ". . . [W]hen one of two or more coinsureds declares bankruptcy and seeks protection under Chapter 7, what part of the proceeds of the liability policy that covered the non-bankruptcy coinsureds should enrich the estate of the coinsured debtor?" *Vitek* does not abrogate *Edgeworth* and this Court is satisfied that the *Edgeworth* test is appropriate to apply here.

Several other courts have also resolved the issue of whether insurance proceeds are property of the estate by determining whether the debtor directly benefits from the proceeds. *See Sfuzzi, supra.* For instance, casualty, fire, or theft insurance

proceeds have been held to be property of the estate because the debtor directly receives the proceeds as merely a change in form of estate property. *See In re Asay*, 184 B.R. 265 (Bankr.N.D.Tx.1995). On the other hand, where the debtor assigns the proceeds or designates a third party as beneficiary pre-petition, the proceeds have been held to be outside the scope of property of the estate. *See In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399–1400 (5th Cir.1987) (liability proceeds payable to the debtor's directors and officers are not part of the bankruptcy estate.); *see also In re Florian*, 233 B.R. 25 (Bankr.Conn.1999) (Since liability insurance policy, although purchased by the debtors, was intended to cover damages to non-estate property, proceeds were not property of the estate.)

In several cases where the liability insurance proceeds were insufficient to cover all tort claims potentially falling within the debtor's insurance coverage, courts either have held that the liability insurance proceeds fall within the scope of "property of the estate" or have enjoined the litigation under 11 U.S.C. § 105. *See In re Fernstrom Storage and Van Co.*, 100 B.R. 1017 (Bankr.N.D.Ill.1989), citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553 (1st Cir.1986); *Forty–Eight Insulations, Inc.*, 54 B.R. 905 (Bankr.N.D.Ill.1985); *Johns–Manville Corp.*, 40 B.R. 219 (S.D.N.Y.1984). In those cases, however, the debtors filed Chapter 11, seeking to reorganize by centralizing numerous lawsuits in a single forum and obtaining relief from tort liability. *Fernstrom, supra* at 1022.

■ Those cases are clearly distinguishable from the case at hand. Although a debtor's legal interests become property of the estate in both Chapter 7 and Chapter 11 cases, the debtor's equitable interests are very different. *See In re Correct Mfg.*

*Corp.*, 88 B.R. 158, 161 (Bankr.S.D.Ohio 1988).

> ... [The Chapter 11 debtor] has equitable interests in the proceeds of such policies because of its need to decrease liability from which third parties' claims derive, affect the outcome of suits against its insurers, and retain the ability to structure settlements of classes of claims. Therefore, despite the recognition of those types of equitable interests in the cases cited in which suits against insurers were stayed during Chapter 11 reorganization proceedings, those equitable interests are not relevant or present in this case.

*Correct Mfg. Corp., Id.* at 162.

The estate's interests do not encompass the right to receive the proceeds of the Liability Insurance Policies and no equitable interests relevant only in Chapter 11 reorganization cases exist. *See Correct Mfg. Corp., Id.*

Under the test of *Edgeworth, supra*, the proceeds of the Liability Insurance Policies are not property of the estate because the Debtor would not have the right to keep the funds. Thus, the insurance proceeds are not protected by the automatic stay.

■ The Trustee contends that granting stay relief will prejudice the creditor body because the costs of defending against Safeway's claim could affect the amounts available for distribution to creditors. The Trustee desires to prevent the continuance of the lawsuit until after he attempts to work out a global settlement with the insurance companies as to coverage disputes. Although the Trustee's argument may be the basis for a § 105 injunction, it is not a basis for denying stay relief in this Chapter 7 case where the insurance proceeds are not property of the estate. Furthermore, this concern alone is insufficient to preclude a creditor from proceeding against the debtor simply to establish liability as a prerequisite to recover from another, an insurer, who may be liable. *In*

*re Jet Florida Systems, Inc.,* 883 F.2d 970, 976 (11th Cir.1989) (argument found to be insufficient basis for denying modification of § 524(e) injunction even were defense funds could have been used revitalizing reorganized debtor); *see also Fernstrom, supra* 100 B.R. at 1023 (debtor's duty to cooperate in defense of action, insufficiency in coverage or deductible not determinative of prejudice or of controlling significance).

In light of the foregoing, this Court finds that the Motion should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Relief From Automatic Stay be, and the same is hereby granted. Safeway may pursue an action against the Debtor as a nominal defendant for the purposes of recovering under the Liability Insurance Policies.