**In the Matter of HAWKEYE CHEMI-CAL COMPANY, Debtor.**

**Bankruptcy No. 86–3231–D.**

United States Bankruptcy Court,
S.D. Iowa.

Feb. 23, 1987.

See also, Bkrtcy., 73 B.R. 318.

---

Salvatore A. Barbatano and Douglas J. Lipke, Chicago, Ill., Terry M. Giebelstein, Davenport, Iowa, for debtor.

---

Joshua J. Mintz, Chicago, Ill., for Security Pacific.

James D. Bruhn, David Sivright, Clinton, Iowa, for Fluor.

William D. Carstedt, Leslie Recht, Chicago, Ill., for Interstate.

Robert G. Allbee, Elizabeth A. Nelson, Des Moines, Iowa, Michael H. Traison, Detroit, Mich., for Unsecured Creditors Committee.

## MEMORANDUM OF DECISION AND ORDER

LEE M. JACKWIG, Bankruptcy Judge.

On February 6, 1987 the motion for interim adequate protection, filed by the debtor-in-possession (debtor) on February 2, 1987, and the resistances filed by Interstate Power Company (Interstate) and Fluor Constructors, Inc. (Fluor) on February 6, 1987 came on for hearing before the undersigned in Des Moines, Iowa. With respect to this motion, Salvatore A. Barbatano and Douglas J. Lipke appeared on behalf of the debtor; Joshua J. Mintz appeared on behalf of Security Pacific Business Credit, Inc. (Security Pacific); James D. Bruhn and David Sivright appeared on behalf of Fluor; William D. Carstedt and Leslie Recht appeared on behalf of Interstate; and Robert G. Allbee, Elizabeth A. Nelson and Michael H. Traison appeared on behalf of the Unsecured Creditors Committee.

The record consists of the relevant filings with the court and of the testimony of Jerry Higdon. Letter briefs were filed by the debtor, Interstate and Security Pacific on February 11, 1987. The creditors filed a letter statement regarding only the adequate protection issue on February 17, 1987. Fluor did not file any brief or argument.

## STATEMENT OF THE ISSUES

In its motion for interim adequate protection, the debtor asks this court to enter an order authorizing it to pay $1,600,000 in insurance proceeds to Security Pacific and granting provisional junior liens 'to Interstate and Fluor in the same amount until the court can determine the security interests of the parties in the insurance proceeds. The motion, the resistances and the statements of counsel at the hearing delineated the following dispositive issues:

1. Whether the insurance proceeds constitute property of the estate pursuant to 11 U.S.C. section 541.

2. Whether the relief sought by the debtor is contemplated by 11 U.S.C. section 364.

3. Whether granting provisional junior liens to Interstate and Fluor will adequately protect any interests of such creditors in the insurance proceeds in issue.

## STATEMENT OF THE FACTS

1. Debtor filed for relief under Chapter 11 of the U.S. Bankruptcy Code on December 8, 1986.

2. Prior to the debtor's filing of the petition in bankruptcy, Industrial Risk Insurers issued a check dated August 25, 1986 to the debtor in the amount of $1,657,760 as partial payment under a Comprehensive All Risk Insurance Policy (property damage and business interruption) and as a result of a fire and explosion upon the debtor's premises on July 6, 1985. The check was made payable to the debtor, Security Pacific and Interstate.

3. The Financing Order entered by this court on December 12, 1986, pursuant to 11 U.S.C. section 364, contained the following qualification:

25. This Order is not intended to, and shall not, prejudice the rights of any party with respect to alleged pre-petition liens, security interests, or contract rights or other claims, in proceeds of debtor's business interruption or casualty insurance. No use or application of said proceeds shall be made without prior court order entered upon not less than two business days' notice.

4. On January 8, 1987 the debtor filed a complaint for declaratory judgment (Adversary Case No. 87–0003) against Security Pacific, Interstate, Fluor and Industrial Risk Insurers. Basically, the debtor seeks a determination from the court that Security Pacific, not Interstate nor Fluor, has a prior valid perfected security interest in the insurance proceeds.

5. On January 9, 1987 an Agreed Order, signed by the parties involved in the adversary proceeding, was entered in the case in chief. The order specified that the proceeds of the insurance draft were to be deposited in an interest bearing account subject to disposition pursuant to the December 12, 1986 Financing Order, including without limitation paragraph 25 set forth above.

6. In the February 2, 1987 motion for interim adequate protection, debtor alleges an immediate need to use the proceeds from the insurance check in order to stay in operation. (Mr. Jerry Higdon, President and Chief Executive Officer of Hawkeye Chemical Co., testified that the insurance proceeds in issue had been incorporated into the projections the debtor prepared in order to obtain Security Pacific's agreement to lend money under the Chapter 11 proceeding, and that such proceeds would be applied to the revolving account with Security Pacific thereby allowing the debtor to borrow more funds. Mr. Higdon explained that a subsequent drop in the market price below the cost for debtor's product [anhydrous ammonia] has resulted in a decrease in borrowing ability because the arrangement with Security Pacific is based upon borrowing up to 50 percent of the cost of the product or the market value, whichever is less. Mr. Higdon attested that the debtor cannot borrow more from Security Pacific at this time under the formula, and that the debtor needs funds to purchase gas on a weekly basis. He stated that the debtor has been forced to curtail production as a result of the unavailability of funds and will be forced to close down completely at the end of February if authority to use the insurance proceeds is not granted. He clarified that although his original projection included the $60,000 weekly demand charge the debtor had been paying to Interstate prior to this court's ruling on January 16, 1987, his present projection regarding the relation between the need for funds and the ability to stay in operation does not include a $60,000 output for the demand charge on a weekly basis.)

7. The debtor further alleges in its February 2, 1987 motion that there is suffi-

cient equity in its assets to adequately protect any interest Interstate and Fluor might have in the insurance proceeds by granting provisional junior liens to those creditors. (Mr. Higdon testified that, based on a 1985 evaluation by M.B. Appraisers of Dallas, Texas, the debtor's going concern value was over $42,000,000 but less than $43,000,000 and the liquidation-in-place basis was $29,000,000 for assets, excluding inventory and accounts receivable. Taking into account both the negative downturn in the market and the positive input of $18,000,000 worth of repairs following fires in July and December of 1985, Mr. Higdon estimated that the present liquidation-in-place value of the debtor's assets would be approximately $15,000,000. He further testified that the present value of the inventory was between $7,000,000 and $8,000,000 and would be worth half of that amount, or $3,500,000, if disposed of over a short period of time. Mr. Higdon testified that the accounts receivable were presently worth $1,700,000 and would be worth $1,500,000 in a liquidation setting. Mr. Higdon verified that the debtor owed Security Pacific approximately $9,000,000 on an asset based loan and $4,000,000 on a revolving loan. He estimated that the debtor owed Interstate approximately $7,000,000 as of the date the petition in bankruptcy was filed.)

8. Interstate filed a resistance to the debtor's motion on February 6, 1987. Interstate contends that the insurance proceeds in issue are the sole property of Interstate, pursuant to an assignment dated July 1, 1986, and do not constitute property of the estate. Interstate further argues that the debtor is attempting to predetermine the adversary matter mentioned above and to compel Interstate to become a lender. Interstate further alleges that as of the date the petition was filed in bankruptcy, the debtor owed Interstate in excess of $9,000,000.

9. Fluor filed a resistance to debtor's motion on February 6, 1987. Fluor alleges that the insurance proceeds are not property of the estate—Fluor claims an interest in the proceeds pursuant to the valid, per-

fected security interests of Security Pacific which Fluor alleges have been transferred, assigned or subordinated to the valid lien or contract rights of Fluor. Fluor also contends that the grant of a junior lien to the extent of the amount of the insurance proceeds would not provide it with adequate protection as required by 11 U.S.C. sections 361, 363 and 364(d).

## APPLICABLE CODE SECTIONS

With respect to what constitutes property of the estate, 11 U.S.C. section 541 provides in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

. . . .

(b) Property of the estate does not include—

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

. . . .

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

With respect to the use of property of the estate, 11 U.S.C. section 363 provides, in part:

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

. . . .

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203 or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly

on any request for authorization under paragraph (2)(B) of this subsection.
(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

. . . .

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

. . . .

The means by which adequate protection may be provided are set forth in 11 U.S.C. section 361:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in decrease in the value of such entity's interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

In the motion for interim adequate protection, debtor relies upon 11 U.S.C. section 364(c), which provides:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3) secured by a junior lien on property of the estate that is subject to a lien.

Utilization of a superpriority lien in obtaining credit is authorized if the following requirements of 11 U.S.C. section 364(d) are met:

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
(A) the trustee is unable to obtain such credit otherwise; and
(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

## ANALYSIS

### I. *Section 541*

Interstate and Fluor argue that the insurance proceeds are not property of the estate. The debtor and Security Pacific contend the insurance proceeds are contemplated by 11 U.S.C. section 541.

Property of the estate is broadly construed by both the Bankruptcy Code and the relevant case law. The estate consists of all legal or equitable interest the debtor may hold, as of the commencement of the case, in particular property. Neither possession nor constructive possession by the debtor is required. 11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.*, 462

U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Hurricane Elkhorn Coal Corp. II*, 19 B.R. 609 (Bankr.W.D.Ky.1982), *aff'd* in relevant part and *rev'd* on other grounds, 32 B.R. 737 (W.D.Ky.1983), *aff'd*, 763 F.2d 188 (6th Cir.1985); *In re Moskowitz*, 13 B.R. 357 (Bankr.S.D.N.Y.1981). Insurance policies and the proceeds from such policies are property of the estate. *Matter of Costa*, 54 B.R. 22 (Bankr.N.J. 1985); *In re Pied Piper Casuals, Inc.*, 50 B.R. 549 (Bankr.S.D.N.Y.1985); *See also*, 11 U.S.C. § 541(a)(6) and *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512 (2nd Cir.1985).

Property is not excluded from a bankruptcy estate merely because it is subject to liens or encumbrances. Such encumbered property is typically the object of both motions for use of cash collateral in situations in which a creditor has an interest in such property and motions for turnover in circumstances in which an entity, other than a custodian, has possession of the property. 11 U.S.C. § 363 and § 542(a); *In re Hurricane Elkhorn Coal Corp. II*, 19 B.R. 609 (Bankr.W.D.Ky.1982). In the *Whiting Pools* decision, the United States Supreme Court stated:

> By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. H.R.Rep. No. 95–595, p. 220 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787. Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." *Ibid.* The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate.... Thus, to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate.
>
> This authorization extends even to property of the estate in which a creditor has a secured interest. §§ 363(b) and (c); *see* H.R.Rep. No. 95–595, p. 182 (1977). Although Congress might have safeguarded the interest of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests. § 363(e),.... At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision for protection, rather than to the nonbankruptcy remedy of possession.
>
> Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate.

*United States v. Whiting Pools, Inc.*, 462 U.S. at 204–05, 103 S.Ct. at 2312–13. (certain citations omitted)

Clearly, the fact that Security Pacific, Interstate and Fluor all claim entitlement to part or all of the insurance proceeds in issue here and in the pending adversary proceeding does not establish that such property is not part of the bankruptcy estate. The proceeds are encumbered assets—property in which the estate has an interest and in which other entities claim an interest. Resolving who has the superior interest or right to the insurance proceeds, which is the issue in the adversary proceeding, is not a condition precedent to ruling on the debtor's request to use the proceeds. As long as the debtor adequately protects such interest, the debtor may use such property of the estate.

At the time of the hearing and in its letter brief, Interstate expanded upon its contention that the insurance proceeds were not property of the estate by arguing that the debtor had assigned such proceeds to Interstate. Interstate draws this court's attention to a settlement agreement into which Interstate and the debtor entered on July 1, 1986. (Exhibit E attached to the debtor's complaint in Adversary No. 87–

0003.) The critical language is found at paragraph 3 of Exhibit E:

> Interstate has been advised by Hawkeye through counsel that Hawkeye is presently unable to pay the amounts due as set forth above and that Hawkeye intends to present a claim for these amounts to its business interruption insurance carrier as partial security for Hawkeye's obligation to pay as aforesaid, Hawkeye hereby assigns to Interstate the proceeds of its business interruption insurance claim to the extent those proceeds represent payment of the demand charge or interest thereon as set forth in paragraphs 1 or 2 above, and Hawkeye agrees to execute and deliver any and all documents reasonably required by Interstate or Hawkeye's insurer to evidence and to further effectuate such assignment. The obligation of Hawkeye to pay the amount due Interstate is absolute, and does not depend upon the receipt of proceeds from Hawkeye's business interruption insuror. Hawkeye shall have the right and obligation to fully pursue a claim against its business interruption insuror for that amount.

The undersigned has reviewed all of the cases cited by Interstate in support of its position and finds them distinguishable from the facts in the present case. Generally, the assignments in the cases upon which Interstate relies were absolute assignments of interests, whereas the alleged transfer by the debtor of a right to receive benefits under the insurance policy to Interstate was merely a means of offering collateral to secure an existing debt relationship. Such collateral assignment was not absolute—Interstate would not be entitled to keep proceeds in excess of any demand charge amount due and owing. Likewise, the debtor would still be obligated to pay Interstate the difference if the demand charge amount exceeded the insurance proceeds.

To the extent that certain authority cited by Interstate might tangentially support finding that a collateral assignment of property thereby excludes such property from the estate, this court specifically adopts the majority view which reaches the opposite conclusion and which is reflected in cases cited by the debtor and Security Pacific. *See In re Family & Indus. Med. Facilities, Inc.*, 25 B.R. 443 (Bankr.E.D.Pa. 1983); *contra, In re O.P.M. Leasing Services, Inc.*, 21 B.R. 993 (Bankr.E.D.N.Y. 1982) and *In re Hurricane Elkhorn Coal Corp. II*, 19 B.R. 609 (Bankr.W.D.Ky.1982). Interstate also relies upon cases which hold that certain proceeds are not property of the estate by operation of 11 U.S.C. section 541(b) and (d). Unlike the debtors in *In re Encinas*, 27 B.R. 79 (Bankr.Or.1983) and *In re Ivory*, 32 B.R. 788 (Bankr.Or.1983), the debtor herein may arguably exercise legal title as a payee under the insurance draft issued pursuant to the comprehensive policy for more than one entity.

## II.  *Section 363 versus Section 364*

As argued in the motion for interim adequate protection and at the time of the hearing, debtor seeks to accomplish the relief requested via 11 U.S.C. section 364(c) which governs obtaining credit or incurring debt when unsecured credit, allowable as an administrative expense, is not available. In essence, the debtor seeks to turn Interstate and Fluor into lenders with respect to the property in which both creditors claim an interest and which both wish to apply to their respective claims against the debtor should they prevail in the adversary matter. In its letter brief, the debtor concedes, as it did in court on February 6, 1987, that there is no case law on point but adds, only as an alternative basis for relief, 11 U.S.C. section 363 which governs the use of cash collateral.

The undersigned has been unable to find any case law supporting the debtor's position with respect to 11 U.S.C. section 364. The relevant legislative history does not contemplate the use of encumbered assets of the estate; rather it discusses Congress' intent in fashioning a means for a trustee or a debtor-in-possession to obtain necessary credit to wind up a liquidation or to obtain a substantial loan to stay in operation, respectively. H.R.Rep. No. 595, 95th Cong., 1st Sess. 346–47 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 57–58 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787.

If proceeds are not assets of the estate, a debtor is not in a position to ask the court to authorize the use of the proceeds as cash collateral under 11 U.S.C. section 363. However, under 11 U.S.C. section 364(c), the debtor can solicit, not force, potential lenders to provide necessary funds in return for certain treatment of the credit or debt. Noticeably, subsection (c) does not raise an adequate protection concern. Only in those cases in which a potential creditor conditions the credit on acquisition of a superpriority lien on encumbered property of the estate, does the trustee or debtor have the burden of proving adequate protection for the existing lienholders.

Assuming the proceeds herein were not assets of the estate and assuming Interstate and Fluor would otherwise agree to a use of the funds if granted superpriority lien status, the debtor would be required to establish that it was unable to obtain such credit otherwise and that there was adequate protection for Security Pacific, the prior lienholder. Of course, since Security Pacific would also be one of the potential lenders (one of the claim holders in the adversary proceeding) and, in essence, would be lending to itself, the debtor would likely satisfy the adequate protection test. Obviously, the debtor has focused only on subsection (c), not subsection (d), of 11 U.S.C. section 364.

This court has no desire to blaze trails, especially when a suggested designated path appears to lead to a cul-de-sac of confusion. Hence, the relief requested will not be granted under 11 U.S.C. section 364. However, since the issues of whether the proceeds are the property of the estate and whether the debtor can adequately protect the interests of Interstate and Fluor in those proceeds were argued by all concerned, no party will be prejudiced by allowing the debtor to proceed under 11 U.S.C. section 363.

## III. *Section 361*

The insurance proceeds constitute property of the estate and fall within the definition of cash collateral found at 11 U.S.C. section 363(a). Before the court may authorize the use requested by the debtor, it must determine that the interests of Interstate and Fluor will be adequately protected as required by 11 U.S.C. section 363(e).

A nonexclusive definition of adequate protection appears in 11 U.S.C. section 361. Debtor's proposal to grant provisional junior liens to Interstate and Fluor is contemplated by the statutory language and legislative history. The determinative factor is whether there is sufficient equity in debtor's assets to tolerate a potential additional encumbrance in the amount of $1,600,000.

With respect to the existence of equity, Mr. Higdon testified that, under a liquidation scenario, debtor's assets would be worth $15,000,000, inventory would equal $3,500,000 and accounts receivable would bring $1,500,000. Against the $20,000,000 equity, Security Pacific holds a claim in the amount of $13,000,000.

Neither Fluor nor Interstate offered evidence that the debtor's estimated values were fatally flawed. Based on the record before this court, there appears to be an equity cushion of approximately $7,000,000 to protect any interest of Fluor and Interstate in the $1,600,000 worth of proceeds. Mr. Higdon did testify that debtor's debt to Interstate was at least $7,000,000. However, according to the debtor's schedules and the statements by counsel, Interstate is an unsecured creditor, at least in the reorganization proceeding in general. Hence, protection of only Interstate's alleged interest in the cash collateral, not its total unsecured claim, is required. Noticeably, the unsecured creditor's committee supports the debtor's motion on the belief that allowing the debtor to remain a going concern will benefit all parties in interest. Finally, there is some question about the nature, validity and extent of certain mechanics liens. From a review of both the debtor's schedules and the statements of counsel, it appears that such claims might amount to in excess of $3,000,000 but would not attach to all of the debtor's assets, such as the inventory and accounts receivable.

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing facts, applicable law and analysis, the court concludes that:

1. The insurance proceeds in issue constitute property of the estate.

2. Being property of the estate in which entities other than and in addition to the estate have an interest, the insurance proceeds may properly be the object of a cash collateral application by the debtor.

3. There is sufficient equity in debtor's assets, inventory and accounts receivable to adequately protect, by means of granting provisional junior liens, any interest which Interstate and Fluor may have in the proceeds.

THEREFORE, IT IS ORDERED that the debtor's motion for interim adequate protection be construed as an application to use cash collateral and, pursuant to 11 U.S.C. section 363, be granted. Accordingly, the debtor is authorized to pay $1,600,-000 of the proceeds from the insurance draft to Security Pacific for application in accordance with the Financing Order entered December 12, 1986. Interstate and Fluor are hereby granted provisional junior liens in debtor's assets, inventory and accounts receivable to the extent of $1,600,-000. Such liens will remain in effect pending the entry of a final order in Adversary Proceeding No. 87–0003.