In re Robert and Cindy ASAY, Debtors.

FIRST STATE BANK, Plaintiff,

v.

Robert and Cindy ASAY, and Molly Bartholow, Chapter 13 Trustee, Defendants.

Bankruptcy No. 394–37433 RCM–13.
Ad. No. 395–3144.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 8, 1995.

Gary M. Vodicka, Dallas, TX, for plaintiff.

Charles Chestnutt, Dallas, TX, for defendants.

Molly Bartholow, Standing Chapter 13 Trustee, Dallas, TX.

## AMENDED MEMORANDUM OPINION

ROBERT McGUIRE, Bankruptcy Judge.

On April 17, 1995, came on to be heard the motion of Robert and Cindy Asay ("Debtors") to determine whether fire insurance proceeds (covering the real property, building, and improvements (the "Building"), but not the contents of the Building) received post-petition for fire damages to such non-exempt business property are property of the estate. By agreement of the parties, hearing on such motion was consolidated with Adversary No. 395–3144, styled *First State Bank v. Robert and Cindy Asay and Molly Bartholow, Chapter 13 Trustee.* Such adversary action being brought by First State Bank (the "Bank") to determine ownership of the fire insurance proceeds. All sides agreed to confine the trial issue on April 17, 1995, to whether the insurance proceeds were property of the estate. Following are the Court's findings of fact and conclusions of law pursuant to Bankr.R. 7052. The fire insurance proceeds are determined to be property of the estate, but Debtors may not use same until they prove, at a further evidentiary hearing, that they are able to furnish adequate protection under §§ 363(c)(2)(B) and 363(e) to the Bank.

### Background Facts

This Chapter 13 case was filed on December 12, 1994. Debtors operate Robert's Exhaust, a muffler installation business located on South Buckner in Dallas. On January 27, 1994, a fire occurred on the premises of Robert's Exhaust (the "Roberts Building") and severely damaged the doors, the roof, the lighting, and the car lifts. Debtors filed a claim with their insurance company, American States Insurance Company ("Insurance Company"). After completing claims investigations and estimates of damage, the Insurance Company issued a check made to the order of Debtors and the Bank, the first lienholder, in the amount of $49,578. The

Bank claims that it is entitled to the entire check. Debtors claim that the check is property of the estate [and wish to use the proceeds to repair the property].

The crux of the dispute as to whether the funds are property of the estate centers around certain provisions in the Deed of Trust and the insurance policy.

The Deed of Trust lists the Bank as beneficiary and Debtors as Grantor. Under the Deed of Trust, Debtors agree to maintain an insurance policy. It also provides:

> Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.

(Deed of Trust, p. 2).

The insurance policy lists the debtor Robert Asay as the named insured. However, the policy also provides that any check for a loss shall be made payable to the mortgagee, and thereafter lists the Bank as mortgagee:

> Loss on building items shall be payable to the mortgagee or trustee listed below, as their interest may appear at time of loss, subject to mortgage clause (without contribution) printed elsewhere in this [sic] policy.

(Texas Standard Policy, p. 1 Part I). The loss payee designation was made in fulfillment of Debtors' foregoing agreement under the deed of trust.

The debt due the Bank is $124,000. While, purportedly, the Bank was oversecured at date of bankruptcy (it had a pre-petition appraisal on the property of $180,000), it appears that the value of its collateral has declined post-petition by reason of the fire and some tenants moving out of the property. No substantial repairs have been made on the property due to the disagreement over the use of the insurance proceeds. As of April 17, 1995, no testimony established the collateral value of the property of the Debtors, exclusive of insurance proceeds securing the Bank debt.

## Insurance Proceeds Are Property of the Estate

■ The Bankruptcy Code defines property of the estate. 11 U.S.C. § 541. The estate consists of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Debtors owned the Roberts Building as of the commencement of the case. Therefore, the building became estate property. Section 541(a)(6) also includes any proceeds from property of the estate. This court finds that the insurance funds in dispute are § 541 proceeds of the building and property of the estate.

Section 541 provides a very broad definition of estate property. *Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir.1987). The insurance monies become estate property as proceeds of the Roberts Building. *See generally, Paskow v. Calvert Fire Ins. Co.*, 579 F.2d 949, 954 (5th Cir.1978) (Insurance proceeds were "proceeds" of collateral under the UCC); *Brown v. First Nat'l Bank of Dewey*, 617 F.2d 581, 582 (10th Cir.1980) (same); Tex. Bus. & Comm.Code (Tex.UCC) § 9.306(a) (" 'Proceeds' includes ... insurance payable by reason of loss or damage to the collateral, except to the extent that it is payable to a person *other than a party to the security agreement* "). The House and Senate reports indicate the broad reach of § 541:

> Proceeds here is not to be used in a confining sense, as defined in the Uniform Commercial Code, but is intended to be a broad term to encompass all proceeds of property of the estate. *The conversion in form of property of the estate does not change its character as property of the estate.*

HR Rep. No. 595, 95th Cong., 1st Sess. 367–368 (1977); S Rep.No. 989, 95th Cong., 2d Sess. 82–83 (1978). (Emphasis added). The insurance proceeds are a change in form of estate property. The Uniform Commercial Code would characterize insurance proceeds on collateral as proceeds of the collateral. The above-quoted legislative history on § 541 indicates that § 541 is to be construed more broadly than the UCC. The Court finds that

the insurance funds are property of the estate.[1]

Several courts have concluded that casualty, fire, or theft insurance proceeds are property of the estate.[2] A recent bankruptcy case, however, found that the mortgage agreement negated any duty of the mortgagee to turn the proceeds over to the debtor. *Jones v. GE Capital Mortgage Co. (In re Jones)*, 179 B.R. 450 (Bankr.E.D.Pa.1995). The Jones mortgage allowed the mortgagee to keep or disburse any insurance proceeds arising from damages to the mortgaged property. The mortgagee would not remit the insurance proceeds to the debtor and the debtor sued for sanctions. Although the court classified the proceeds as estate property, the court refused sanctions because the mortgagee had the right to retain the proceeds under the mortgage. *Id.*

Debtor's mortgage contains a provision similar to the provision discussed in *Jones*. The Deed of Trust gives the Bank the authority to retain the funds or repair the property. However, under the facts of this case, it appears that the automatic stay prevents the Bank from enforcing this Deed of Trust provision. Although state law would entitle the Bank to apply the insurance proceeds at its discretion under the insurance policy and the Deed of Trust,[3] § 541(a)(6) gives the estate an interest in those proceeds. Section 541 supersedes state law and limits the Banks rights under the Deed of Trust. *See Matter of Dias*, 24 B.R. 542, 545 (Bankr.D.Idaho 1982); *Bradt*, 757 F.2d 512; *In re Island Helicopter*, 63 B.R. 515; *In re Woods*, 97 B.R. 850.

The Bankruptcy Code frequently alters creditors' rights under security agreements. For example, the Deed of Trust provides the Bank with a right of foreclosure upon default. However, in bankruptcy, the Bank cannot exercise this right without moving to lift the automatic stay. 11 U.S.C. § 362(a)(3), (4) & (d).

This case differs from certain Fifth Circuit cases which exclude insurance proceeds from estate property where the debtor is not the policy beneficiary. *Louisiana World Exposition*, 832 F.2d at 1399–1401; *Houston v. Edgeworth (Matter of Edgeworth)*, 993 F.2d 51, 55–56 (5th Cir.1993). Each of these cases involve an insurance policy which does not relate to any other estate asset. *Louisiana World Exposition* 832 F.2d at 1399 (officer and director liability insurance); *Edgeworth*, 993 F.2d at 56 (medical malpractice liability insurance). In such cases, the policy itself is the only relevant asset. Further, the Fifth Circuit cases did not involve a beneficiary by reason of a secured transaction.[4] *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3rd Cir.1993), involved a credit life insurance policy on the debtor and not property of the estate; therefore, § 541(a)(6) was not involved.

---

**1.** It is understood that, for the most part, the UCC does not apply to real property. However, the UCC can provide interpretive guidance on the scope of § 541 in view of the foregoing legislative history.

**2.** *Bradt v. Woodlawn Auto Workers F.C.U.*, 757 F.2d 512, 515 (2d Cir.1985); *In the Matter of Hawkeye Chemical Co.*, 71 B.R. 315 (Bankr. S.D.Iowa 1987) (pre-petition fire) *Fisher v. Ins. Co. of Pennsylvania (In re Pied Piper Casuals, Inc.)*, 50 B.R. 549, 551 (Bankr.S.D.N.Y.1985) (pre-petition theft loss); *In re Island Helicopter Corp.*, 63 B.R. 515, 522 (Bankr.E.D.N.Y.1986); *Ledford v. Fidelity Financial Svces. (In re Hill)*, 174 B.R. 949, 953 (Bankr.S.D.Ohio 1994); *Woods v. John Fox Oldsmobile (In re Woods)*, 97 B.R. 850, 851–852 (Bankr.W.D.Va.1989).

**3.** *See English v. Fischer*, 660 S.W.2d 521 (Tex. 1983); *Lexington Ins. Co. v. Gray*, 775 S.W.2d 679, 683 (Tex.App.—Austin 1989, writ denied) (Texas courts will enforce a standard mortgage clause in accordance with its express terms); *McCulloch v. Zero Plate Co.*, 269 S.W.2d 830, 832 (Tex.App.—Fort Worth 1954, writ ref'd n.r.e.) (If a borrower insures mortgaged property for the benefit of a mortgagee, the mortgagee is entitled to the insurance proceeds to the extent of his interest in the property). In Appleman, 5A *Insurance Law & Practice* § 3401 at 285, it is stated in part: "the words, 'as their interest may appear' refer to debts owing the insured and mean the insurer will pay the mortgagee to the extent of his lien at the time of the loss ..." *Citing Nelson v. Consumers County Mut. Ins. Co.*, 326 S.W.2d 535 (Tex.Civ.App.—San Antonio 1959 writ dism'd).

**4.** In addition, the Fifth Circuit recently stressed the limited nature of the holdings in *Louisiana World Exposition* and *Edgeworth*. *Homsy v. Floyd (Matter of Vitek, Inc.)*, 51 F.3d 530, 534 n. 17 (5th Cir.1995).

In contrast, the Debtors' insurance policy in this case relates to the Roberts Building, which is property of the estate. Section 541 includes the insurance funds as they relate post-petition to the damaged building. This holding comports with the congressional intent to create a broad definition of estate property. As the House and Senate Reports stress, "the conversion in form of property of the estate does not change its character as property of the estate." House and Senate Reports, *supra* p. 4. Although the insurance policy names the bank as loss payee, the character of the funds as proceeds of the building does not change. The foregoing discussion answers the sole issue raised. Further amplification only addresses some of the parties' other contentions.

### Loss Payee Designation Part of Collateral Security Arrangement

Under state law, the loss-payee clause does not absolutely divest the debtors of all interest in the proceeds. *See McConnell Const. Co. v. Ins. Co. Of St. Louis,* 428 S.W.2d 659, 662 (Tex.1968) (Allowing the mortgagor to recover insurance proceeds in its own name despite the existence of a loss-payee clause. The mortgagee was not a party to the suit and the builder had already done the repairs to the property. The policy was a builder's risk policy); Appleman, 5A Insurance Law & Practice § 3401, p. 279, (1966) ("When the policy is taken by the mortgagor, payable to the mortgagee as his interest shall appear, then the policy is for the benefit of both parties"). *See Fidelity & Guaranty Ins. Corp. v. Super–Cold Southwest Co.,* 225 S.W.2d 924, 927 (Tex.App.—Amarillo 1949, writ ref'd n.r.e.) (Where mortgagor agrees to insure for the benefit of mortgagee, the law will place an equitable lien on insurance proceeds as if mortgagor had complied with agreement). In *Rio Grande National Life Ins. Co. v. Hardware Dealers Mutual Fire Ins. Co.,* 209 S.W.2d 654, 656 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.), the court stated:

The effect of the adoption by appellant and appellees of the Standard Mortgage Clause as a part of the insurance policy was to make a new and independent contract between them so that under its provisions, appellant's interest in the insured property became secured by a separate contract, in addition to the contract existing between appellant and the mortgagor or owner of the property....

*Id.* *Firemen's Fund American Ins. Co. v. Ken–Lori Knits, Inc.,* 399 F.Supp. 286 (E.D.N.Y.1975) (Regarding a loss-payee clause as creating a security interest in insurance proceeds upon destruction of the collateral).

Courts examine the structure of an agreement to determine whether to treat an assignment as absolute or as a conveyance of a security interest. *See Southern Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683, 685 (5th Cir.1983); *Looney v. Nuss (Matter of Miller),* 545 F.2d 916 (5th Cir.1977), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *In re Joseph Kanner Hat Co. Inc.,* 482 F.2d 937, 940 (2nd Cir.1973): *In re Hurricane Elkhorn Coal Corp. II,* 19 B.R. 609 (Bankr.W.D.Ky.1982), *aff'd in applicable part and rev'd on other grounds,* 32 B.R. 737, 739 (W.D.Ky.1983), *aff'd,* 763 F.2d 188 (6th Cir.1985); *In re OPM Leasing Services Inc.,* 30 B.R. 642 (Bankr.S.D.N.Y.1983); *Hillcrest State Bank v. Bankers Leasing Corp. of Texas,* 544 S.W.2d 727, 728 (Tex.App.—Dallas 1976, writ ref'd n.r.e.) ("Merely because an assignment is absolute on its face does not prevent a court from treating it as security for a debt if it was so intended"); *Kaufman v. Blackman,* 239 S.W.2d 422, 427 (Tex. App.—Dallas 1951, writ ref'd n.r.e.) (An assignment of insurance policy rights, though absolute in form, may sometimes have the effect of transferring security in collateral).

Several aspects of the lending transaction indicate an intent to give a security interest. The form of the "assignment" is one commonly incident to a commercial transaction involving tangible property as collateral. The rights and obligations arise out of the Deed of Trust on the secured property. Absent a debtor-creditor relationship, the transaction would appear abnormal. Under the Deed of Trust, the Bank may only use funds to reduce the debt or repair the collateral. These types of facts do not exist in *Edge-*

*worth, Louisiana World Exposition,* or *McAteer.*

### Other Cases Cited by Bank

█ Many of the cases cited by the Bank are distinguishable. Most of the cases involve pre-petition losses.[5] Where the loss occurs pre-petition, depending on applicable state law, it could be contended that a debtor has no interest in the insurance proceeds as of the commencement of the case since, arguably, the mortgagee rights vest prior to bankruptcy.[6] *See generally, Affiliated Computer Systems, Inc. v. Sherman (Matter of Kemp),* 52 F.3d 546 (5th Cir.1995) (The timing of bankruptcy can affect what property comes into the estate, depending on whether the debtor was divested of all interest in that property prior to the bankruptcy filing). Unless some federal interest requires a different result, property interests are generally defined by state law. *Id.* at 551 n. 10, citing *Butner v. United States,* 440 U.S. 48, 54–56, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136.

Other cases cited by the Bank do not address whether the insurance proceeds become estate property. *In re Haas,* 71 B.R. 335 (Bankr.N.D.Ohio 1987); *United States v. Oakland City Apts., Inc. (Matter of Oakland City Apts., Inc.),* 1 B.R. 123 (Bankr.N.D.Ga. 1979). In fact, *Oakland* finds that the proceeds and the real estate fall within the exclusive jurisdiction of the court. 1 B.R. at 124. *Haas* discussed whether the mortgagee or a third party repairer had priority to the proceeds. 71 B.R. at 339. The third party had made repairs at the debtor's request, and without the mortgagee's consent. *Id.* The court determined mortgagee had priority over the mortgagor/debtor under the loss-payee clause. *Id.* At 340. The court noted,

"In case of loss the insurance proceeds *stand as security for the mortgage debt* in lieu of the property destroyed." *Id.* at 339. (Emphasis added).

The Bank also relies on *Williams v. Rutherford (Matter of Rutherford),* 73 B.R. 665 (Bankr.W.D.Mo.1986). Where the insurance policy named the mortgagee as loss-payee, the court did not allow mortgagee to recover the insurance proceeds. *Id.* at 668. The court reasoned that the mortgagee was otherwise adequately protected on its debt by the value of other properties of the debtor in which they (the mortgagee loss payee) had cross-collateralized their security interest. *Id.* at 669.

### Conclusion

This court finds that the insurance proceeds relating to the Roberts Building are property of the estate under § 541(a)(6). However, Debtors may not use the funds unless they are able to furnish adequate protection under §§ 363(c)(2)(B) and 363(e). This opinion amends the original opinion entered herein.

It is so **ORDERED.**

---

**5.** *Pearson v. Rapstine,* 203 F.2d 313, 314 (5th Cir.1953) (a preference suit where court found *res judicata* by reason of prior state court judgment, and also found that rights to insurance proceeds accrued more than four months before bankruptcy, and, therefore, no preference); *Walton Land & Timber Co. v. Runyan (In re Holton & Strickland),* 269 F. 130, 131 (5th Cir.1920) (the trustee made no apparent claim to the first $4,000 of fire insurance proceeds and was successful in obtaining the $2,000 additional insurance proceeds obtained); *In re Moskowitz,* 14 B.R. 677, 678 (Bankr.S.D.N.Y.1981) (medical treatment proceeds assigned pre-petition held not preferential); *In re Ivory,* 32 B.R. 788, 789 (Bankr.D.Oregon 1983); *Clarke & Cohen v. Family & Industrial Medical Facilities, Inc. (In re Family & Industrial Medical Facilities, Inc.),* 25 B.R. 443, 445 (Bankr.E.D.Pa.1982) (pre-petition trust being enforced); *In re Encinas,* 27 B.R. 79, 81 (Bankr.D.Oregon 1983).

**6.** For a contrary view on pre-petition insurance loss proceeds as constituting property of the estate under § 541, see *Hawkeye Chemical,* 71 B.R. 315; *Pied Piper,* 50 B.R. 549.