**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4783-18T1

BERNARD and DESIREE
SHEPHERD, h/w,

    Plaintiffs-Appellants,

v.

SELENE FINANCE, LP,
WILMINGTON SAVINGS FUND
SOCIETY, FSB, d/b/a CHRISTIANA
TRUST AS SELENE'S ASSIGNEE,

    Defendants-Respondents.

_____

        Submitted April 28, 2020 – Decided June 24, 2020

        Before Judges Accurso, Gilson and Rose.

        On appeal from the Superior Court of New Jersey, Law
        Division, Gloucester County, Docket No. L-1104-17.

        Bernard Shepherd, appellant pro se.

        Knuckles Komosinski & Manfro, LLP, attorneys for
        respondents (John E. Brigandi, on the brief).

PER CURIAM

This appeal arises out of a dispute over the timing of the disbursement of proceeds from property insurance. Plaintiffs Bernard and Desiree Shepherd appeal from orders granting summary judgment to defendants Selene Finance, L.P. (Selene) and Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, as trustee for BCAT 2015-13ATT (Wilmington) (collectively, defendants). Plaintiffs essentially complain that defendants unduly delayed paying insurance proceeds and did not hold the proceeds in an interest-bearing account. The record establishes that the insurance proceeds were part of a bankruptcy action initiated by plaintiffs, and defendants paid the proceeds once the bankruptcy court approved the disbursement. The mortgage also did not require defendants to hold the insurance proceeds in an interest-bearing account. Accordingly, we affirm.

I.

The underlying disputes arise out of the interplay among a mortgage foreclosure action, a bankruptcy action, and a storm that damaged the mortgaged property. We discern the facts from the record developed on the motions for summary judgment.

In 2005, plaintiffs obtained a loan in the amount of $185,000 from Washington Mutual Bank, F.A., and gave the bank a promissory note and

mortgage on property located in Brigantine (the Property). The Property is a duplex structure that plaintiffs used as a rental and vacation home.

In 2007, the note and mortgage were assigned to Wells Fargo Bank, N.A. (Wells Fargo). In December 2009, plaintiffs defaulted on the note and mortgage. Accordingly, in February 2010, Wells Fargo filed an action to foreclose on the mortgage. A judgment of foreclosure was entered in December 2012.

In October 2013, before the Property was sold, plaintiffs filed a Chapter 13 bankruptcy action. While the record does not include the petition filed in the bankruptcy action, the record does include orders from the bankruptcy court. Those orders reflect that the bankruptcy court treated the Property as part of the bankruptcy estate.

In 2015, plaintiffs and Wells Fargo reached an arrangement in the bankruptcy court to cure the default on the note and mortgage. In that regard, in June 2015, the bankruptcy court entered an order that allowed plaintiffs to make a payment to cure their arrears and, thereafter, make monthly payments as called for in the mortgage. The bankruptcy court order also provided that the monthly repayments would be overseen as part of the bankruptcy proceeding and the bankruptcy action would continue.

In the meantime, the Property was damaged by a storm in January 2014. Wells Fargo had insured the Property and, therefore, a claim against the insurer was asserted. The insurer initially agreed to make some payments but disputed how much it would have to pay for the damage. Following an arbitration, the insurer eventually paid just over $191,000 to cover the damage to the Property. The payments were made in installments and the final payment was made in March 2016.

The initial insurance payments were made to Wells Fargo, and Wells Fargo placed those proceeds in an interest-bearing account. In July 2015, Wells Fargo assigned the note and mortgage to Wilmington and Selene became the servicer of the loan. Consequently, the initial insurance proceeds were turned over to defendants. The insurance payments made after July 2015 were paid directly to defendants. Defendants placed the insurance proceeds in an escrow account that did not earn interest.

Plaintiffs and defendants then got into a dispute concerning when and under what conditions the insurance proceeds would be paid to plaintiffs. Paragraph 5 of the mortgage states in relevant part:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds . . . shall be applied to the restoration or repair of the Property, if the restoration or repair is economically feasible and

A-4783-18T1

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or [a]pplicable [l]aw requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument . . . with the excess . . . paid to Borrower.

Beginning in April 2016, plaintiffs asked defendants to release the insurance proceeds to them so that they could oversee the repairs to the Property. Bernard Shepherd had been a building inspector and he maintained that he had the experience and ability to oversee the repairs. Defendants refused because their policies required a licensed contractor to oversee the repairs. In October 2016, plaintiffs then requested defendants to use the insurance proceeds to pay off the loan. Defendants refused, contending that the Property should be repaired, and they continued to dispute plaintiffs' ability to do that without a licensed contractor.

A-4783-18T1

In September 2017, plaintiffs sued defendants seeking to compel defendants to pay the insurance proceeds to them. Plaintiffs also sought damages for defendants' alleged bad faith in delaying the turnover of the insurance proceeds. Because the bankruptcy action was still pending, plaintiffs' suit was dismissed without prejudice.

In April 2018, plaintiffs' suit against defendants was reinstated after the bankruptcy court lifted the automatic stay and allowed the matter to proceed in the Superior Court. Significantly, however, the bankruptcy matter continued and the bankruptcy court did not order the release of the insurance proceeds. Accordingly, in July 2018, the Superior Court directed plaintiffs to seek an order from the bankruptcy court allowing the insurance proceeds to be released from the bankruptcy estate.

On August 7, 2018, the bankruptcy court entered an order releasing the insurance proceeds and stated those proceeds were "no longer property of the [bankruptcy] estate." Thereafter, defendants applied the insurance proceeds to pay off the note and mortgage and paid the surplus to plaintiffs. The judgment in the foreclosure action was also vacated.

In January 2019, defendants moved for summary judgment contending that plaintiffs had not been damaged by their actions. Plaintiffs opposed the

motion and the court heard oral arguments. On March 29, 2019, the trial court entered an order granting partial summary judgment to defendants. In a written opinion accompanying its order, the court explained that the insurance proceeds had been part of the bankruptcy estate. Thus, the trial court reasoned that until the bankruptcy court released those funds in August 2018, defendants could not turn those funds over to plaintiffs. The trial court also noted that defendants had refused to turn over the insurance proceeds because plaintiffs had not hired a licensed contractor to oversee the repairs. Consequently, the trial court held that plaintiffs had suffered no damage from defendants not paying the insurance proceeds earlier because plaintiffs had not obtained the release from the bankruptcy court.

The trial court also initially denied summary judgment on plaintiffs' claim that the insurance proceeds should have been held in an interest-bearing account. In April 2019, however, defendants moved for summary judgment on that claim. Plaintiffs also moved for reconsideration. In an order entered on May 24, 2019, the trial court granted defendants summary judgment, holding that the mortgage did not require defendants to place the insurance proceeds in an interest-bearing account. The court then dismissed plaintiffs' complaint with prejudice. The court also denied plaintiffs' motion for reconsideration.

A-4783-18T1

II.

Plaintiffs appeal from the March 29, 2019 and May 24, 2019 orders granting summary judgment to defendants and denying their motion for reconsideration. Plaintiffs make essentially two arguments. They contend that the trial court erred in (1) construing the mortgage to allow defendants to withhold the release of the insurance proceeds; and (2) not holding that defendants were required to place the insurance proceeds in an interest-bearing account. Plaintiffs also raise a new argument contending that the trial court may have been misled by defendants. The dispositive issue is that the insurance proceeds were part of the bankruptcy estate and could not be released to plaintiffs until the bankruptcy court authorized that release. The mortgage also expressly states that defendants did not have to place the insurance proceeds in an interest-bearing account.

We review orders granting summary judgment de novo, using the same standard as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

A-4783-18T1

genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

1.    The Bankruptcy Proceeding

A Chapter 13 bankruptcy proceeding falls within the scope of Title 11 of the United States Code and must be commenced under either Sections 301 or 302 of Title 11. In re Velazquez, 570 B.R. 251, 253 (Bankr. S.D. Tex. 2017); In re Greene, 359 B.R. 262, 263 (Bankr. D. Ariz. 2007) (citing 11 U.S.C. § 303(a)). Under Title 11 of the United States Code, any legal or equitable interest the debtor has in property as of the filing of the bankruptcy petition becomes property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); see also Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 325 (2017) (citing Koch Refining v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1343 (7th Cir. 1987)). Accordingly, the Bankruptcy Code provides that any proceeds or profit derived from property of the estate and any "interest in property that the estate acquires after" commencement of the action, is part of the bankruptcy estate. 11 U.S.C. § 541(a)(6) to (7).

Therefore, insurance proceeds paid for property damage are included in the bankruptcy estate when those proceeds relate to an asset of the estate. See In re Asay, 184 B.R. 265, 265-67 (Bankr. N.D. Tex. 1995) (holding that the

A-4783-18T1

definition of "estate property" is broad and includes insurance proceeds paid after the commencement of a Chapter 13 bankruptcy action); In re Hoffmeister, 191 B.R. 875, 878-79 (Bankr. D. Kan. 1996).

The bankruptcy court has exclusive jurisdiction over all the property that comprises the bankruptcy estate, including insurance proceeds. 28 U.S.C. § 1334(e)(1); In re Becker, 136 B.R. 113, 115 (Bankr. D. N.J. 1992) (citation omitted). Moreover, when a bankruptcy matter is initiated, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is automatically stayed until the bankruptcy court lifts the stay. 11 U.S.C. § 362(a)(3), (d); Asay, 184 B.R. at 267.

Applying this law to the undisputed facts of this case establishes that defendants were entitled to summary judgment on plaintiffs' claims concerning a delay in payment. Plaintiffs initiated a Chapter 13 bankruptcy action in October 2013. Thereafter, the Property and the insurance proceeds paid in connection with damage to that Property were part of the bankruptcy estate. Consequently, until the bankruptcy court released the insurance proceeds, those proceeds were not available to be paid to plaintiffs. This fact was established by the bankruptcy court itself. On August 7, 2018, the bankruptcy court issued an order releasing the insurance proceeds from the bankruptcy estate.

A-4783-18T1

Plaintiffs contend that defendants effectively misled them from April 2016 until approximately November 2017 by insisting that the insurance proceeds would not be released unless plaintiffs hired a licensed contractor. That may well be a fair characterization. Nevertheless, whatever positions defendants were taking, it was plaintiffs who initiated the Chapter 13 bankruptcy action. Thus, as a matter of law, the insurance proceeds were part of that bankruptcy action and could not be released without an order from the bankruptcy court.

Plaintiffs complain that defendants should have pointed out that fact earlier. The trial court, however, correctly noted that plaintiffs could have filed a motion with the bankruptcy court and nothing defendants did precluded them from taking such action. Consequently, and unfortunately, the parties did not effectively communicate for approximately two years, but that does not establish grounds for a claim by plaintiffs against defendants.

In short, once the bankruptcy court entered its order in August 2018 holding that the insurance proceeds could be released, there is no dispute that defendants acted promptly in paying off the note and mortgage and paying the excess of the insurance proceeds to plaintiffs. Moreover, the judgment of foreclosure was vacated. Accordingly, we affirm the trial court's orders granting

A-4783-18T1

summary judgment to defendants and denying plaintiffs' motion for reconsideration.

2.    The Interest Claim

Plaintiffs also argue that the trial court erred in granting summary judgment on their interest claim.  In that regard, they argue that defendants were obligated to place the insurance proceeds in an interest-bearing account.  The express language of the mortgage refutes that claim.

Paragraph 5 of the mortgage provides, in relevant part, that:  "Unless an agreement is made in writing or [a]pplicable [l]aw requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds."  Those terms are clear and unambiguous.  Accordingly, we give them "their plain, ordinary meaning."  See Barr v. Barr, 418 N.J. Super. 18, 32 (App. Div. 2011) (citations omitted).  The record does not contain any agreement between plaintiffs and defendants to hold the insurance proceeds in an interest-bearing account.  Nor is there any law requiring a mortgagee to hold insurance proceeds in an interest-bearing account if the mortgage or another agreement between the parties does not impose that obligation.  See In re Trevino, 535 B.R. 110, 150 (Bankr. S.D. Tex. 2015)

(citation omitted) (holding that there is a "general rule against imposing a duty in the context of a mortgagor-mortgagee relationship").

Plaintiffs point out that Wells Fargo placed the insurance proceeds in an interest-bearing account. That Wells Fargo chose to do so did not impose such an obligation on defendants. Plaintiffs also argue that the trial court initially allowed their interest claim to proceed to trial. The court made that ruling initially by referencing guidelines issued by the Federal National Mortgage Association (Fannie Mae). When defendants filed their second motion for summary judgment, the trial court correctly found that the mortgage at issue was not issued in connection with a Fannie Mae loan and, accordingly, the Fannie Mae guidelines were not applicable. In short, our de novo review establishes that defendants were not obligated to hold the insurance proceeds in an interest-bearing account. Therefore, we affirm the trial court's order granting summary judgement on the interest claim.

3.    Plaintiffs' New Argument

Plaintiffs also seek to raise an argument for the first time on appeal. In that regard, they contend that the trial court may have been misled by positions taken by defendants during the proceedings. A review of the record does not disclose any material misrepresentations. Moreover, we decline to review this

13

argument further because appellate courts normally do not consider an argument raised for the first time on appeal. State v. Alexander, 233 N.J. 132, 148 (2018) (citing DYFS v. M.C. III, 201 N.J. 328, 339 (2010)).

To the extent that we have not addressed plaintiffs' other arguments, it is because those arguments have insufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4783-18T1